706 So.2d 265 (1996)
Ernest Griffin MOORE
v.
STATE.
CR-95-0051.
Court of Criminal Appeals of Alabama.
May 10, 1996.
Opinion on Return to Remand September 27, 1996.
Opinion on Second Return to Remand February 28, 1997.
Rehearing Denied June 20, 1997.
Certiorari Denied October 17, 1997.
*266 C. Michael Smith, Mobile, for appellant.
Jeff Sessions, atty. gen., and Yvonne Saxon, asst. atty. gen., for appellee.
C. Michael Smith and Suzanne Paul, Mobile, for appellant (On return to remand and on 2nd return to remand).
Jeff Sessions, atty. gen., and Yvonne Saxon, asst. atty. gen., for appellee (on return to remand).
Bill Pryor, atty. gen., and Yvonne Saxon, asst. atty. gen., for appellee (On 2nd return to remand).
Alabama Supreme Court 1961599.
PATTERSON, Judge.
Ernest Griffin Moore was indicted by a Baldwin County grand jury in five separate indictments for knowingly obtaining property by deception in the first degree in violation of § 13A-8-3 of the Code of Alabama 1975. These indictments stemmed from Moore's activity as a partner in a partnership engaged in residential construction and remodeling in the Gulf Shores area. The victims alleged that money advanced to the partnership was not properly spent. After a plea bargain, in which Moore agreed to compensate all of the victims of the offenses charged in the five indictments,[1] four of the indictments were nol-prossed, and on March 13, 1995, Moore pleaded guilty to one count. Moore received a 10-year sentence; that sentence was suspended and he was placed on five years' supervised probation and was granted permission to move to Florida to secure new employment.
At the subsequent restitution hearing, Moore was ordered to pay restitution of $144,933.25 in monthly installments of $2,000. Moore raises seven issues in this appeal from the restitution order: (1) Whether the trial court erred in finding that the damage claimed had been proximately caused by Moore's conduct; (2) Whether the trial court erred in awarding restitution in the amounts claimed by the victims because, Moore argues, the damages they are claiming are not damages recoverable under the Alabama Restitution to Victims of Crimes Act; (3) Whether the trial court erred by awarding restitution allegedly without legal evidence of the precise damages claimed; (4) Whether *267 the trial court erred by failing to set forth the facts and circumstances underlying its restitution order; (5) Whether the trial court erred in ordering restitution in an amount and in installment payments that allegedly vastly exceed the defendant's ability to pay; (6) Whether the trial court allegedly failed to exercise any discretion when it ordered restitution in the exact amount requested by the claimants; and (7) Whether the trial court erred by ordering restitution when the claims of the victims allegedly arose out of breaches of contracts that, he argues, should have been resolved through civil actions.
In reviewing these claims, we are mindful of the discretion vested in the trial court. "The particular amount of restitution is a matter which must of necessity be left almost totally to the discretion of the trial judge. That discretion should not be overturned except in cases of clear and flagrant abuse." Clare v. State, 456 So.2d 355, 356 (Ala.Cr. App.1983), aff'd, 456 So.2d 357 (Ala.1984). However, for this court to properly review the actions of the trial court for abuse of discretion, the trial court must comply with the statutory requirements set forth in § 15-18-69. That section states, that following a restitution hearing, "[t]he court shall thereafter enter its order upon the record stating its findings and the underlying facts and circumstances thereof." (Emphasis added.) In this case, the trial court's restitution order does not include a recitation of the underlying facts and circumstances that led to the resulting order.
This court will review a properly drafted restitution order with the purpose of the Restitution to Victims of Crimes Act in mind. The Legislature intended "that all perpetrators of criminal activity or conduct be required to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof." § 15-18-65. However, before there can be any recovery, the criminal activity must be the proximate cause of the pecuniary loss, damage, or injury. See Butler v. State, 608 So.2d 773, 775 (Ala.Cr. App.1992); Strough v. State, 501 So.2d 488, 491 (Ala.Cr.App.1986). Also, the victim must actually suffer pecuniary loss, damage, or injury. Restitution serves a compensatory function and cannot be used as a punitive measure; therefore the amount of restitution cannot exceed the actual loss. Ex parte Clare, 456 So.2d at 358 (Ala.1984).
At a restitution hearing, the burden is on the State to prove disputed facts by a preponderance of the evidence. See Harris v. State, 542 So.2d 1312, 1314 (Ala.Cr.App. 1989). In this case, there is uncontradicted evidence that Moore had in fact spent at least some of the money advanced to him on the victims' projects. If Moore reasonably and in good faith expended some or all of the funds advanced to him by the victims on the respective victim's projects then those amounts should not be considered as a pecuniary loss, damage, or injury resulting from Moore's criminal conduct. Based on the record before us, we are unable to determine whether the awards in the restitution order erroneously included restitution to the victims for expenditures for which Moore should have received credit. As an example and to illustrate the quandary this court is placed in when the trial court does not enter its order "upon the record stating its findings and the underlying facts and circumstances thereof," we will explore the facts supporting the claim of one of the victims Robert Malone.
Malone submitted a restitution affidavit to the trial court that was admitted into evidence as State's exhibit one. The total claimed in the affidavit was $65,830. This amount represented "PROPERTY EXPENSES$54,970" ("Cost to build house $126,290 [less] contracted cost $69,320");[2] "MEDICAL EXPENSES$860" ("Doctor visits $200, Medicine for hypertension $660"); and "OTHER EXPENSES$10,000" ("Interest on $51,000 for 2 years").
Malone testified at the hearing that he had advanced Moore $25,000 and that an additional $27,000 in unpaid bills had been incurred *268 by the time that Moore "left and disappeared." Although Malone testified that it was his understanding that only about $500 of his $25,000 advance was expended on his project, he also admitted that he really did not know how much of the $25,000 was actually spent on his project. The record includes evidence that strongly indicates that Moore had paid an unascertained amount to Gulf Shores for building permits, had paid other suppliers for lumber, and had paid some subcontractors. However, in awarding the victim the exact amount claimed, the trial court appears to have ignored any expenditures by Moore on the victim's project. We note that Moore was not even credited with the $500 that admittedly had been expended on Malone's project.
Moreover, we are not even certain what the total eventual cost of Malone's project was. Malone testified that the house was being built for resale and that once it was built he resold the house for $83,000. On direct examination the following ensued:
"[Malone]: "By the time we completed the house our total costs over and above what we had contracted with the purchasers of that home was $54,970.
"[The prosecutor]: Let me stop you there. That was the amount, $54,000, that you had to pay to complete the job.

"[Malone]: Yes."
Taking into account the testimony quoted above and Malone's restitution affidavit, the evidence establishes three different figures for the cost of construction arrived at by different methods. First, Malone's affidavit claims that the cost of building the house was $126,290.[3] Second, his original testimony on direct examination was that his cost was $54,970 over what he resold the house for which would make the eventual cost of the house $137,970.[4] Third, when asked for clarification of the $54,970 in the next line of his testimony he states that his cost of completion was $54,000. If the cost of completion refers to the amount of money expended after the initial $25,000 advance to the defendant, then the cost of the house as completed would only be $79,000.[5] Obviously, only one, if any, of these figures is correct. The trial court took the $126,290 as the correct figure, but from the record it is impossible to determine what factors led the trial court to determine that the State had established this figure by a preponderance of the evidence.
Also, the medical expenses that were awarded need an explanation as to why the trial court found them to be related to the criminal activity of Moore. Additionally, the $10,000 interest expense that was awarded is not established by the record as a direct or an indirect loss. Although Malone claimed that he had to borrow $51,000, the record does not reflect such a need, without an explanation of the reasons for determining that it cost at least $51,000 above the original contract price with Moore for Malone to build the Malone house. Put another way, would Malone have had to borrow $51,000 absent Moore's criminal activity?
The failure of a defendant to comply with a restitution order often is a violation of the terms of the defendant's probation, resulting in serious consequences to the delinquent defendant. The restitution hearing and order must comply with the statutory requirements.
As to another matter, the trial court ordered Moore to pay the restitution in monthly installment payments of $2000. The record before us contains ample evidence that this amount is far beyond Moore's financial means. Because the payment of this amount is a term of Moore's probation, an inability to pay that amount would negatively affect Moore's ability to meet the terms of his probation.
This court must have, on the record, the trial court's specific findings and the specific underlying facts and circumstances thereof that led the trial court to grant restitution as to each claimfacts deduced from legal evidence that support the trial court's finding that each amount awarded is for (1) damages recoverable under the Alabama Restitution *269 to Victims of Crimes Act and (2) that were proximately caused by Moore's criminal activity. Similarly, we need an explanation on the record of why the trial court ordered monthly payments of $2000 when the record before this court shows that that amount would clearly exceed Moore's financial ability. We find that the record needs to be supplemented before we can determine whether the trial court abused its discretion in the amount and manner of restitution. We reserve deciding any of the other issues in this case until the restitution order is modified to comply with the statutory requirements.
In remanding this case, we authorize the trial court to conduct an additional hearing if it determines that the evidence in the existing record is insufficient for the trial court to amend its previous restitution order. The return to remand should include a transcript of any additional hearing.
Additionally, pursuant to Rule 10(g), Ala. R.App.P., the record is to be supplemented to include the colloquy that took place when Moore pleaded guilty.
The trial court shall take all action directed in sufficient time to permit the circuit clerk to make a proper return to this court at the earliest possible time within 28 days of the release of this opinion.
REMANDED WITH INSTRUCTIONS.
All Judges concur.

On Return to Remand
PATTERSON, Judge.
In Moore v. State, 706 So.2d 265 (Ala.Cr. App.1996), we reviewed Ernest Griffin Moore's appeal of the restitution order entered following his conviction of theft of property by deception in the first degree in connection with transactions related to his construction business. We remanded the case to the trial court, and directed that court, inter alia, to enter specific findings and to provide the specific underlying facts and circumstances that led the trial court to grant restitution as to each claim. We also ordered the trial court to give an explanation as to why it ordered monthly restitution payments of $2,000 when it appeared from the record that such payments vastly exceeded Moore's resources.
On remand, the trial court has substantially complied with our instructions[1] and we will now address the issues Moore raises in his appeal. Moore raises seven issues: (1) Whether the trial court erred in finding that the damage claimed was proximately caused by Moore's conduct; (2) Whether the trial court erred in awarding restitution in the amounts claimed by the victims because, Moore argues, the damages they are claiming are not recoverable under the Alabama Restitution to Victims of Crimes Act; (3) Whether the trial court erred by awarding restitution allegedly without legal evidence of the precise damages claimed; (4) Whether the trial court erred by failing to set forth the facts and circumstances underlying its restitution order; (5) Whether the trial court erred in ordering restitution in an amount and in installment payments allegedly vastly exceeding Moore's ability to pay; (6) Whether the trial court allegedly failed to exercise any discretion when it ordered restitution in the exact amount requested by the victims; and (7) Whether the trial court erred by ordering restitution when the claims of the victims allegedly arose out of breaches of contracts that, Moore argues, should have been resolved through civil actions.
The trial court's amended order of restitution includes the following:
"1.... Mr. Moore owes Mr. Malone $54,970 in damages representing the difference between the contract price and the actual cost of completing the house in issue.... As a result of his criminal activities, Mr. Moore deprived Mr. Malone of the monies paid to complete the house....
"Mr. Moore owes Mr. Malone $200 for medical services and $660 for medication which Mr. Malone purchased to treat the hypertension which he developed as a result *270 of Mr. Moore's criminal activities. It is this Court's finding that Mr. Moore's medical condition, and the resulting expenses, arose from the stress caused by the unfinished construction project and the pressure received from vendors wanting to collect outstanding bills....
"Mr. Moore owes Mr. Malone $10,000 for interest charges which Mr. Malone incurred on a $51,000 loan that he assumed to pay for the completion of the house....
"It is hereby ordered that Mr. Moore pay restitution in the amount of $65,830 to Mr. Robert Malone....
"2.... Mr. Moore owes Mr. Murray $19,099.00 for the unused monies which Mr. Murray had paid to Mr. Moore in draws for work which Mr. Moore had falsely claimed to have completed....
"Mr. Moore owes Mr. Murray $3270.36 for habitat rental fees which Mr. Murray had to pay while awaiting the completion of his dwelling....
"Mr. Moore owes Mr. Murray $5,594.41 for storage costs which Mr. Murray had to incur for the keeping of his personal property while awaiting the completion of his dwelling....
"Mr. Moore owes Mr. Murray $2500.00 for legal fees incurred as a result of Mr. Moore's criminal activities....
"It is hereby ordered that Mr. Moore pay restitution in the amount of $30,463.77 to Mr. Joe Murray....
"3.... Mr. Moore owes Linda and Marston Duke damages for the difference between the contract price of their house ($78,540) and the actual cost which the Dukes incurred to complete their house ($106,429.48).... $27,889.48....
"4.... Mr. Moore owes Mr. Stanton the entire sum for the attorney's fees which Mr. Stanton incurred to clear up a lien which originated from Mr. Moore's criminal activities.... $1750.00....
"5. Regarding the $19,000 to be paid to David Jones c/o Gulf Shores Building Supply, this Court finds that Mr. Moore owes Mr. Jones the entire sum of $19,000 which represents that amount due on a promissory note which Mr. Moore executed to Gulf Shores Building Supply. Mr. Moore executed the note in settlement of a dispute over his account with Gulf Shores Building Supply. This dispute arose when Mr. Moore purchased construction supplies from Gulf Shores Building Supply but did not make full payment. The monies owed to Gulf Shores Building Supply are indirect pecuniary damages resulting from Mr. Moore's criminal activities....
"6. It is further ordered that Mr. Moore pay $2000.00 in restitution every month. The total amount of restitution due is $144,933.25. The defendant will only be on probation under this Court for a period of five (5) years. Since restitution is so high, this Court ordered that restitution be made at said amount to ensure defendant made payment of restitution in full while still under probation of this Court."
At a restitution hearing, the burden is on the State to prove disputed facts by a preponderance of the evidence. See Harris v. State, 542 So.2d 1312, 1314 (Ala.Cr.App. 1989). "The particular amount of restitution is a matter which must of necessity be left almost totally to the discretion of the trial judge. That discretion should not be overturned except in cases of clear and flagrant abuse." Clare v. State, 456 So.2d 355, 356 (Ala.Cr.App.1983), aff'd, 456 So.2d 357 (Ala. 1984).

I.
For the purposes of this appeal, we point out that we have addressed Moore's contention that the trial court erred by not setting forth the facts and circumstances forming the basis of its restitution order. We remanded the case to the trial court, and on remand, the trial court has set forth the facts and circumstances underlying its restitution order.

II.
Moore contends that the trial court erred in finding that the damage claimed was proximately caused by Moore's conduct. We disagree.
*271 The Legislature intended "that all perpetrators of criminal activity or conduct be required to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof." § 15-18-65. However, before there can be any recovery, the criminal activity must be the proximate cause of the pecuniary loss, damage, or injury. See Butler v. State, 608 So.2d 773, 775 (Ala.Cr.App. 1992). Also, the victim must actually suffer pecuniary loss, damage, or injury. Restitution serves a compensatory function and cannot be used as a punitive measure; therefore, the amount of restitution cannot exceed the actual loss. Ex parte Clare, 456 So.2d 357, 358 (Ala.1984).
Based on a further thorough review of the record, a further examination of the principles underlying restitution, a review of relevant caselaw, and on the deference this Court is required to give to the findings of a trial court when conflicting evidence is presented, we hold that the trial court did not err in finding that the damage suffered by the victims was proximately caused directly or indirectly by the criminal acts of Mr. Moore.
We note that our original opinion concluded that at first blush it appeared that Moore should be credited with certain expenditures. The opinion included the following statement: "If Moore reasonably and in good faith expended some or all of the funds advanced to him by the victims on the respective victim's projects then those amounts should not be considered as a pecuniary loss, damage, or injury resulting from Moore's criminal conduct." Upon further examination of the principles underlying the Alabama Restitution to Victims of Crimes Act and upon examination of the law of damages as it relates to construction contracts, we think that the above-quoted statement in our original opinion was in error. See Kohn v. Johnson, 565 So.2d 165, 166-69 (Ala.1990).

III.
Moore contends that the trial court erred in awarding restitution in the amounts claimed by the victims because, Moore argues, the damages they are claiming are not recoverable under the Alabama Restitution to Victims of Crimes Act. We disagree.
"Section 15-18-66(2), Code of Alabama 1975, provides that a victim may recover from a convicted defendant all special damages which a person could recover in a civil suit. Special damages are those which flow naturally, but not necessarily, from a wrongful act. McLendon Pools, Inc. v. Bush, 414 So.2d 92 (Ala.Civ.App.1982). Although the restitution statute is broad in scope, there are nevertheless some limits upon the extent to which a victim may recover for pecuniary loss. Before a defendant can be held liable for damages, it must be established that his criminal act was the proximate cause of the injury sustained by the victim. Bush v. Alabama Power Company, 457 So.2d 350 (Ala.1984); Ruffin Coal & Transfer Company v. Rich, 214 Ala. 633, 108 So. 596 (1926). `The proximate cause of an injury is the primary moving cause without which it would not have occurred, but which, in the natural and probable sequence of events, produces the injury.' City of Mobile v. Havard, 289 Ala. 532, 538, 268 So.2d 805 (1972); see also, Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala.1976). As our Supreme Court observed in Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975), foreseeability is the cornerstone of proximate cause. This does not mean, however, that the defendant must have actually foreseen the particular injury which resulted from his action. Rather, the injury sustained by the victim must have been of such a nature that a reasonable person could have foreseen or anticipated that the injury might occur as a natural consequence of the action. Williams v. Woodman, 424 So.2d 611 (Ala. 1982); Prescott v. Martin, 331 So.2d 240 (Ala.1976). Where an injury is caused by intentional conduct, the rules of proximate cause are more liberally applied. Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala.1983).
"The Alabama Restitution to Victims Act, by reference to the pertinent Alabama civil law, permits a victim to recover all reasonable expenses which are incurred *272 due to the defendant's wrongful conduct. See, Foodtown Stores, Inc. v. Patterson, 282 Ala. 477, 213 So.2d 211 (1968); Birmingham Amusement Company v. Norris, 216 Ala. 138, 112 So. 633 (1927); Ross v. United States, 640 F.2d 511 (5th Cir.1981). Whether an expense is reasonable is a matter addressed to the sound discretion of the trial court. Absent a clear abuse of discretion, the ruling will not be reversed on appeal. Clare v. State, 456 So.2d 355 (Ala.Cr.App.1983), aff'd. 456 So.2d 357 (Ala.1984)."
Strough v. State, 501 So.2d 488, 491 (Ala.Cr. App.1986). We find no abuse of discretion in the trial court's finding that the damages which underlie the restitution order were within the scope of the Alabama Restitution to Victims Act.

IV.
Moore contends that the trial court erred by awarding restitution allegedly without legal evidence of the precise damages claimed. We find this claim to be without merit.
A restitution hearing was held at which the prosecution introduced affidavits, letters, the testimony of the various victims supporting their respective claims for restitution, and other evidence. The evidence presented was legally sufficient to support the restitution order. See Henry v. State, 468 So.2d 896, 901-902 (Ala.Cr.App.1984), cert. denied, 468 So.2d 902 (Ala.1985).

V.
Moore contends that the trial court erred in ordering restitution in a total amount and in installment payments that allegedly vastly exceed Moore's ability to pay. We agree that the monthly installments are excessive, but as previously discussed, we conclude that the trial court did not abuse its discretion by awarding the total amount of restitution.
As previously noted, the trial court is imbued with a great deal of discretion when fashioning a restitution order. However, that discretion should be guided by the applicable Rules of Criminal Procedure and the relevant restitution statutes. Rule 26.11, Ala.R.Crim.P. states:
"(a) Imposition of Restitution. Restitution should be ordered in all cases where a victim has been injured or damaged. The financial resources and obligations of the defendant and the burden that payment of restitution will impose should be considered in determining how much restitution is to be paid or collected, i.e., whether to be paid by installments and what length of time should be given for payment."
(Emphasis added). Further guidance can be found in § 15-18-68, which provides:
"In determining the manner, method or amount of restitution to be ordered the court may take into consideration the following:
"(1) The financial resources of the defendant and the victim and the burden that the manner or method of restitution will impose upon the victim or the defendant;
"(2) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court;
"(3) The anticipated rehabilitative effect on the defendant regarding the manner of restitution or the method of payment;
"(4) Any burden or hardship upon the victim as a direct or indirect result of the defendant's criminal acts;
"(5) The mental, physical and financial well being of the victim."
While these provisions are not mandatory, they do reflect the general intention of the Alabama Supreme Court and the Alabama legislature that in fashioning a restitution order the trial court should make it reasonable and realistic based on the defendant's ability to pay.
In this case, the unrefuted evidence shows that Moore is married and that he has a young daughter. It further shows that the combined monthly income from Moore's current employment as a hired charter boat pilot and his wife's employment is approximately $2,640 per month and that their monthly living expenses total approximately *273 $2,562 per month.[2] The undisputed evidence also shows that Moore does not own any real estate, stocks, bonds, cash value in any insurance policy, boat, or part of a business. It further shows that he has no source of funds other than his current employment. The restitution order requires Mr. Moore to pay $2,000 per month. This monthly amount obviously vastly exceeds his present ability to pay.
The trial court's amended order of restitution quoted above shows that the trial court ordered $2,000 in monthly payments because it wanted the total restitution to be paid while Moore was on probation. No further explanation was given. We surmise that the trial court's motive was to hold the threat of the revocation of Moore's probation over his head to ensure that the victims would be fully compensated. While the goal of full payment to the victims is laudable and permissible, we think that the excessive installment payments are actually counterproductive to the trial court's objective and might thwart any possibility of repayment by causing Moore's incarceration for violation of his probation, which would necessarily delay or prevent him from making restitution. But see Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (court cannot automatically revoke probation just because a probationer is unable to pay).
The threat of the revocation of probation is certainly a sword of Damocles hanging over any probationer's head; however, in this case, because the installment payments are excessive when compared to Moore's available funds, the sword is not hanging by a hair, it is falling rapidly toward Moore's head. The trial court's objective could be achieved through a less draconian restitution order that takes into consideration Moore's ability to pay. We note that if Moore's financial condition improves, the trial court could increase his monthly payment obligations by a reasonable amount at any time during the term of his five-year probation. See Rule 27.2, Ala.R.Crim.P. Also, after the probation period has ended, the restitution obligations will continue and are enforceable through the civil process. See § 15-18-78.[3] See, also, Rice v. State, 491 So.2d 1049, 1052-53 (Ala. Cr.App.1986) (Restitution is a part of the criminal sentencing procedure despite the provisions in the Code which permit civil enforcement. The purpose of allowing civil enforcement is to increase the victim's chances of "collecting restitution."). Additionally, unlike most civil judgments, the payment of restitution is not dischargeable in bankruptcy proceedings. See Kelly v. Robinson, 479 U.S. 36, 47-53, 107 S.Ct. 353, 360-363, 93 L.Ed.2d 216 (1986).

VI.
Moore contends that the trial court allegedly failed to exercise any discretion when it ordered restitution in the exact amount requested by the claimants. Moore's contention is without merit. As shown above, a hearing was held at which evidence was presented and the trial court, in its amended restitution order, has given a reasonable explanation for its award of the respective restitution amounts.

VII.
Moore contends that the trial court erred by ordering restitution when the *274 claims of the victims allegedly arose out of breaches of contracts that, he argues, should have been resolved through civil actions. This contention is without merit. Moore pleaded guilty to theft of property by deception in the first degree. The law of Alabama, as previously discussed, permits the awarding of restitution to the victims of crime in addition to any civil remedies that exist. Any civil recovery is reduced by the amount of restitution. See §§ 15-18-75, 15-18-78(b).
Pursuant to our above analysis of all of the issues presented in this appeal, we affirm as to the total amount of restitution due to each of the victims; however, we find it necessary to remand this case to the trial court for it to reconsider the amount of the monthly installment payments. We refer the trial court to our discussion in Part V of this opinion to guide it in its reconsideration of the restitution monthly payments.
In remanding this case again, we authorize the trial court to conduct additional hearings if it determines that the evidence in the existing record is insufficient for the trial court to amend its previous restitution order. The return to remand should include a transcript of any additional hearing.
The trial court shall take all action directed in sufficient time to permit the circuit clerk to make a proper return to this court at the earliest possible time within 56 days of the release of this opinion.
AFFIRMED IN PART; AND REMANDED WITH INSTRUCTIONS.
All Judges concur.

On Second Return to Remand
PATTERSON, Retired Appellate Judge.
On May 10, 1996, we remanded this case to the trial court with instructions to enter specific findings as to the fact upons which it relied in ordering the appellant, Ernest Griffin Moore, to pay restitution. The trial court filed a return to our remand on August 6, 1996, setting out its findings. We reviewed those findings and on September 27, 1996, affirmed the trial court's order as to the amount of restitution due each of the victims; however, we found that the monthly installment payment of $2,000 ordered by the trial court was excessive. We remanded the case to the trial court again for reconsideration of the monthly installment payment in light of the evidence of the appellant's ability to pay. Pursuant to our instructions, the trial court filed a return to our remand on November 18, 1996, showing that the court had reconsidered the amount of the monthly payment for restitution and had reduced it to $1,250. Based upon the record before us, we find that this amount falls within that range that is within the discretion of the trial court. Having previously decided all other issues raised on appeal adversely to the appellant, and now finding the revised monthly installment payment to be proper, we conclude that the judgment of the trial court in all respects is due to be, and it is hereby, affirmed.
The foregoing opinion was prepared by Retired Appellate Judge JOHN PATTERSON while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
LONG, P.J., and McMILLAN, COBB, and BROWN, JJ., concur.
BASCHAB, J., recuses herself.
NOTES
[1] The amount of compensation was not stipulated but rather was to be determined at a subsequent restitution hearing.
[2] The correct figure arrived at by this calculation would be $56,970, but Malone's affidavit shows $54,970.
[3] There was no evidence or testimony in the record to explain how this figure was computed.
[4] $83,000 + $54,970 = $137,970
[5] $25,000 + $54,000 = $79,000
[1] The trial court was also ordered to supplement the record with the colloquy that took place during the appellant's guilty plea in open court. The trial court has not done so; however, as that colloquy is not germane to the issues raised in the appellant's brief we are not remanding to the trial court again to supplement the record with the colloquy.
[2] Mr. Moore's monthly income is $1600. This is relevant because the restitution order is only binding on him as his wife was not indicted or convicted.
[3] "§ 15-18-78. Effect of restitution order; rights of victim, etc.; section cumulative and in pari materia with other statutes.

"(a) A restitution order in a criminal case shall be a final judgment and have all the force and effect of a final judgment in a civil action under the laws of the State of Alabama. The victim on whose behalf restitution is ordered, the executor or administrator of the victim's estate, or anyone else acting on behalf of the victim, shall be entitled to all the rights and remedies to which a plaintiff would be entitled in a civil action under the laws of this state as well as any other right or remedy pertaining to such restitution order as may be provided by law.
"(b) The provisions of this section shall be read and deemed in pari materia with other provisions of law. Provided however, the provisions of this section are cumulative and shall not be construed so as to deprive any victim of any other remedy or relief to which a victim may now or hereafter be entitled pursuant to law."