Terry Darray Best was indicted for two counts of unlawfully breaking and entering a vehicle, violations of § 13A-8-11(b), Ala. Code 1975;[1] one count of burglary in the third degree, a violation of § 13A-7-7, Ala. Code 1975;[2] and one count of receiving stolen property in the first degree, a violation of § 13A-8-17, Ala. Code 1975.[3] These four offenses were consolidated for purposes of trial. A jury found Best guilty of all four offenses, and he was sentenced, as an habitual felony offender, to 45 years' imprisonment on each of the breaking-and-entering convictions; 45 years' imprisonment on the burglary conviction; and 50 years' imprisonment on the receiving-stolen-property conviction, with the four sentences to run concurrently. Additionally, Best was ordered to pay Garrick $3,300 in restitution for the receiving-stolen-property conviction (case no. CC-03-1069).
 I.
Best contends that while the sentences imposed by the trial court "fall within the statutory ranges . . . they are so disproportionate to the crimes committed [that] they violate the cruel and unusual punishment clause of . . . the United States . . . Constitution." (Best's brief at p. 16.)
As previously noted, Best was convicted of two counts of unlawful breaking and entering of a vehicle, which are Class C *Page 1052 
felonies, see § 13A-8-11(b)(3), Ala. Code 1975; one count of burglary in the third degree, which is a Class C felony, see §13A-7-7(b), Ala. Code 1975; and one count of receiving stolen property in the first degree, which is a Class B felony, see §13A-8-17(b), Ala. Code 1975. At the sentencing hearing, the State presented evidence indicating that Best had three prior felony convictions for breaking and entering, and Best admitted that he had been "convicted of three felonies of breaking and entering." (R. 186.) Under the Habitual Felony Offender Act, three prior felony convictions enhance the sentence imposed on a Class C felony to not less than 15 years' imprisonment or more than 99 years' or life imprisonment, see § 13A-5-9(c)(1), Ala. Code 1975; and three prior convictions enhance the sentence imposed on the Class B felony to not less than 20 years' imprisonment or more than life imprisonment, see § 13A-5-9(c)(2), Ala. Code 1975.
It is well settled that, absent an abuse of discretion, this Court will not disturb a sentence on appeal where the sentence imposed by the trial court is within the statutory range. SeeNix v. State, 747 So.2d 351, 357 (Ala.Crim.App. 1999); see alsoBuford v. State, 891 So.2d 423 (Ala.Crim.App. 2004). In Nix, this Court upheld the imposition of a sentence of life imprisonment without the possibility of parole because the sentence was within the statutory range. Clearly, the sentences imposed by the trial court in the present case were well within the statutory range. Thus, we will not disturb the sentences imposed by the trial court.
 II.
Best also contends that the trial court erred when it ordered him to pay Peter Garrick, the victim in case no. CC-03-1069, $3,300 in restitution. Specifically, he contends that "[t]he personal property items for which Garrick received restitution were stolen by somebody else and not Best" and that "[t]here is no legal authority to grant restitution for items stolen when it is not even alleged that Best stole or even received those items." (Best's brief at pp. 29-30.)
In case no. CC-03-1069, Best was indicted for, and convicted of, receiving stolen property "to-wit: one (1) 1988 Dodge Dakota pickup truck . . . having a value exceeding One Thousand and no/100 ($1,000.00) dollars, the property of Peter Laufer Garrick." (C. 43.) The indictment did not allege and there was no proof presented at trial that Best had either stolen or received Garrick's missing personal property.
At trial, Garrick testified that on January 29, 2003, his estranged wife came to his house to see their children; that he had taken some medication for gout and fell asleep while she was there; that when he woke up, his 1988 Dodge Dakota pickup truck was gone; that he found a driver's license belonging to his estranged wife lying in the driveway; and that he "had a pretty fair idea [that] it probably was [his] estranged wife" who had taken his pickup truck without his permission. (R. 33.) Garrick further testified that he does not know Best; that he did not give Best permission to drive his truck; and that he did not give his estranged wife permission to loan his truck to anyone.
On February 7, 2003, the Anniston police responded to a burglary call at 600 East 11th Street in Anniston. When they arrived on the scene, they found a 1988 Dodge pickup truck — with "one door open" (R. 77) and its hazard/emergency lights flashing — parked on the northwest corner of the property. The garage door was raised two to three feet and Best was inside the garage, rummaging around in *Page 1053 
the backseat of a BMW automobile located in the garage. Best was arrested, and the keys to the truck parked on the northwest corner of the property were found in his pocket.
Garrick further testified that he picked up his truck from Anniston Body Shop where the police had had it towed. He stated that although his truck had not been damaged, the guns, tools, and other personal property that had been in his truck when it was taken were missing.
At the sentencing hearing, Garrick testified that the following items were in his truck when it was taken:
 "A Winchester rifle; a Remington 12-gauge; a nine millimeter Smith and Wesson pistol; a 101-piece Craftsman socket set; a floor jack; a Sawzall; a skill saw; an 18-volt drill; three 100-foot extension cords; a 20-inch chainsaw; assorted handtools; a leather jacket; and a briefcase."
(R. 180.) He stated that the approximate value of this missing personal property was $3,300. He also testified to the following:
 "[Prosecutor]: Now, you testified I think at [the] jury trial that Mr. Best did not steal your truck; is that right?
"[Garrick]: Right.
 "[Prosecutor]: I believe at trial you testified that your estranged wife stole your truck basically, took it without your permission?
 "[Garrick]: Yes, ma'am. "[Prosecutor]: And so we really don't know if Mr. Best ever had those items that were listed; is that correct?
"[Garrick]: That's correct.
 "[Prosecutor]: Okay. When you got your truck back, was it damaged?
"[Garrick]: No, ma'am.
". . . .
 "[Best's attorney]: At this time, Your Honor, we would like to move that the victim's itemized list be removed from the record because it was not brought up at trial. And as he stated, he has no proof and the [S]tate's never presented any proof that Mr. Best did, in fact, steal the vehicle or the property listed in the vehicle. Therefore, it's irrelevant at this time.
 "THE COURT: Mr. Garrick, are you asking the Court to impose restitution against Mr. Best for $3,300 or not? I'm not sure I understand.
"BY [THE PROSECUTOR]:
 "[Prosecutor]: Mr. Garrick, do you want the Court to impose restitution against Mr. Best for the loss of your items?
"[Garrick]: Yes, ma'am.
 "[Prosecutor]: And what would you say — you were without your truck for how long?
"[Garrick]: Approximately three weeks.
 "[Prosecutor]: And did you lose pay because you were without your truck? "[Garrick]: Yes, ma'am.
 "[Prosecutor]: And how much pay would you say you lost?
 "[Garrick]: That will be a hard thing to judge. I had some side jobs I couldn't do. I also had no transportation. That is my only transportation. So I had to, you know, to pay people for rides and do that for three weeks. I wouldn't know how to put a figure on it. I mean, it cost me three weeks. I couldn't go to the grocery store with my kids. Couldn't do anything except get rides from people.
 "[Prosecutor]: So you didn't have your truck and apparently Mr. Best did. That was your testimony at trial; is that right? *Page 1054 
"[Garrick]: As far as I know, yes, ma'am.
 "[Prosecutor]: And he didn't have your permission to have it?
"[Garrick]: No, ma'am.
"[Prosecutor]: Okay. Nothing further, Your Honor.
 "THE COURT: All right. Hadn't been an offer of the written report, so I'm going to deny your motion. He's testified to that amount.
"[Best's attorney]: Yes, sir."
(R. 180-83) (emphasis added).
The State contends that Best did not preserve this issue for appellate review because, it says, he did not object to the amount of restitution at the sentencing hearing and he did not challenge the restitution award in his motion for a new trial. We disagree. Best brought to the trial court's attention that there had been no proof that Best was ever in possession of Garrick's personal property, and he argued that the property list was irrelevant and should not be considered for purposes of determining restitution. Thus, we find that this issue has been properly preserved for appellate review.
Section 15-18-65, Ala. Code 1975, states, in pertinent part:
 "[I]t is essential to be fair and impartial in the administration of justice, that all perpetrators of criminal activity or conduct be required to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof."
(Emphasis added.) Section 15-18-66(1), Ala. Code 1975, defines "criminal activity" as "[a]ny offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant."
In Strough v. State, 501 So.2d 488, 491 (Ala.Crim.App. 1986), this Court stated that "[b]efore a defendant can be held liable for damages, it must be established that his criminal act was the proximate cause of the injury sustained by the victim."
In Day v. State, 557 So.2d 1318, 1319 (Ala.Crim.App. 1989), this Court stated:
 "In the instant case, appellant was ordered to pay restitution to Patterson after being convicted of the attempted murder of Johnson, an offense which was not alleged in the indictment or proven at trial to be the cause of Patterson's injury. `Before a defendant can be held liable for damages, it must be established that his criminal act was the proximate cause of the injury sustained. . . .' Strough v. State, 501 So.2d 488, 491 (Ala.Cr.App. 1986). While there was some evidence in the record tending to show that appellant did cause Patterson's injury, he was not on trial here for causing her injury, nor had he been convicted of causing her injury. . . .
 "If it could be said that Patterson's injury arose from appellant's attempted murder of Johnson, for which he was convicted, then she could properly be characterized as a victim, and restitution to her would be proper. However, when one suffers a loss which resulted from conduct that was not the subject of the defendant's prosecution and for which a subsequent prosecution would be necessary to determine the defendant's criminal liability, if any, we hold that an order of restitution to that person is no more appropriate than would be the sentencing of the defendant to a term of imprisonment without first affording him the basic constitutional guarantees of a trial and verdict on those charges. Appellant should not have been ordered to pay restitution to Patterson."
In Brothers v. State, 531 So.2d 317, 318-19 (Ala.Crim.App. 1988), this Court stated: *Page 1055 
 "The appellant was indicted for burglary in the third degree, theft of property in the first degree, and arson in the second degree. He pleaded guilty to burglary in the third degree and theft of property in the first degree, with the arson charge being continued under the condition that the charge would be dismissed if the appellant pleaded guilty to the other offenses and did not appeal. The appellant was sentenced to life imprisonment pursuant to the Habitual Felony Offender Act and was ordered to pay restitution for the full replacement value of the house and its contents which were destroyed in the fire resulting from the arson.
"I
 "The appellant alleges that the trial court erred in ordering him to pay restitution for damage to the property caused by arson when he was not convicted of arson and did not admit that his criminal activity resulted in the damage which was caused by the arson. . . .
"`. . . .'
 "The State argues that the damage caused by the arson was an `indirect result' of the appellant's criminal activity.
". . . .
 "The appellant did not admit committing arson, nor was he convicted of committing arson. This case is distinguishable from Ex parte Clare, 456 So.2d 357
(Ala. 1984). The appellant in Clare was ordered to pay restitution for monies embezzled in an amount greater than that involved in the indictment. However, she admitted embezzling monies which rightfully belonged to her employer and was convicted of embezzling.
 "The burning of the victim's house was not an indirect result of the theft or burglary under § 13A-2-5, Code of Alabama (1975). . . .
". . . .
 "Clearly the appellant's acts of breaking and entering and committing theft were not the cause of the burning of the victim's house; rather, the act of committing arson was the cause. The burning of the house would not have been within the contemplation of the appellant in committing burglary or theft. Therefore, the trial court erred in ordering the appellant to pay restitution for the property damaged by the arson."
In Lamar v. State, 803 So.2d 576 (Ala.Crim.App. 2001), this Court reversed the trial court's restitution award of $25,000 to Rosalyn Sellers and her son for injuries they had sustained in an automobile accident. Lamar had entered a guilty plea to the offense of leaving the scene of an accident, a violation of §32-10-1, Ala. Code 1975, and he argued on appeal that "the circuit court improperly ordered him to pay restitution because, he argue[d], the injuries the victims sustained were not `proximately caused' by his leaving the scene." Lamar, 803 So.2d at 577. In our opinion reversing the trial court's restitution award, this Court stated:
 "The term `criminal activities' is defined in § 15-18-66, Ala. Code 1975, as `[a]ny offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant.' `However, before there can be any recovery, the criminal activity must be the proximate cause of the pecuniary loss, damage, or injury.' Moore v. State, 706 So.2d 265, 267 (Ala.Crim.App. 1996). Therefore, under Alabama's restitution statute, Lamar could be ordered to pay restitution to the victims of his crime only if one of two conditions existed: (1) his victims suffered any direct or indirect pecuniary losses as a result of the *Page 1056 
activity for which he has been convicted or, (2) Lamar admitted to other criminal conduct during these proceedings that was the proximate cause of any injuries to the victims.
". . . .
 ". . . The crime of `leaving the scene' does not require that the defendant cause the accident; it requires only that he be involved in the accident. . . . The trial court could order Lamar to pay restitution only for the pecuniary losses his victims sustained as a result of the offense to which he pleaded guilty. . . . Lamar's plea of guilty to the offense defined in §§ 32-10-1 and 32-10-2 did not result in a conviction for causing the accident that resulted in the injuries to Sellers and her son, and, therefore, his guilty plea could not authorize the trial court to sentence him to pay restitution for injuries sustained as a result of the accident. See Day v. State, 557 So.2d 1318, 1319
(Ala.Crim.App. 1989) (holding that an order of restitution is inappropriate for injuries the victim suffers as a result of `conduct that was not the subject of the defendant's prosecution and for which a subsequent prosecution would be necessary').
 "The trial court could also have ordered Lamar to pay restitution for `any other criminal conduct' he admitted during these proceedings that was the proximate cause of the victims' injuries. See § 15-18-66. However, at no point during the plea colloquy, the sentencing hearing, or the restitution hearing did Lamar ever admit to having caused the accident resulting in the victims' injuries. Although evidence was presented during both the sentencing and restitution hearings that Lamar had caused the accident because he was speeding and he struck a turning vehicle, Lamar himself never made such an admission. Under the plain language of § 15-18-66, restitution can be ordered only for `other criminal conduct' that is admitted by the defendant. This court has previously held that an admission, as defined in § 15-18-66, requires `a judicial admission sufficient to support a conviction before restitution can be ordered.' Day v. State, supra, at 1319. Therefore, the trial court had no statutory authorization to order Lamar to pay restitution to Sellers and her son for the injuries they sustained during the accident, because Lamar never admitted any conduct that could be said to be the proximate cause of their injuries."
Lamar, 803 So.2d at 577-79 (footnote omitted).
In the present case, Best was convicted of receiving stolen property, i.e., Garrick's 1988 Dodge pickup truck. There were no allegations or proof that Best ever had possession of Garrick's personal property. In fact, as previously noted, Garrick admitted at the sentencing hearing that he "really [didn't] know if Mr. Best ever had those items" in his possession. (R. 181.) At the sentencing hearing, Best stated that "[t]he truck was given to [him] for drugs . . . [that he] gave [Garrick's] wife drugs to use the truck" and that "on this date, February the 7th, [he] gave her some crack cocaine for the truck." (R. 186-87.)
In light of the foregoing, the trial court improperly ordered Best to pay restitution to Garrick in the amount of $3,300 for his missing personal property. Consequently, the trial court's restitution award is reversed and the cause is remanded for the trial court to amend its judgment accordingly.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
McMILLAN, P.J., and COBB, J., concur. *Page 1057 
BASCHAB, J., concurs in the result in part and dissents in part, with opinion.
WISE, J., concurs in the result in part and dissents in part, and joins BASCHAB, J.
[1] The victim in case no. CC-03-655 was Odis Rogers and the victim in case no. CC-03-1070 was Hoyt "Chip" Howell, Jr.
[2] The victim in case no. CC-03-0657 was Chip Howell.
[3] The victim in case no. CC-03-1069 was Peter Garrick.