BURKE, Judge.
*748 Amanda Holderfield was convicted of second-degree assault, a violation of § 13A-6-21, Ala. Code 1975. On April 7, 2015, Holderfield was sentenced to 60 months' imprisonment. Her sentence was suspended, and she was ordered to serve three years on supervised probation and to enroll in mental-health treatment and substance-abuse treatment. Holderfield was also ordered to pay $100 to the Crime Victims' Compensation Fund and $2,219.99 in restitution to the "City of Gardendale Municipal Work[er]s Comp[ensation] Fund." (C. 14.) On May 6, 2015, Holderfield filed a "Motion to Set Aside Order of Restitution and Request Hearing," in which she claimed that the State had failed to present evidence of the amount of restitution and requested the court to set aside its restitution order and to set a hearing to determine the appropriate amount of restitution. (C. 82.) On May 12, 2015, the circuit court set a hearing on Holderfield's motion for June 15, 2015. On June 15, 2015, the circuit court denied Holderfield's motion to set aside the restitution order. Holderfield filed a notice of appeal on June 19, 2015.
During trial, the State presented the following evidence:
On November 16, 2013, Officer Chad Barnett and Officer Buddy Partridge with the City of Gardendale Police Department responded to a call regarding a suicide attempt. When Officer Barnett and Officer Partridge arrived at the residence where the suicide attempt was alleged to have occurred, Holderfield's boyfriend informed the officers that Holderfield was inside attempting to commit suicide. The officers saw Holderfield inside the residence and went inside. Holderfield ran to the kitchen, grabbed a knife and then ran to the bathroom in the hall. The officers followed Holderfield, and Officer Partridge was able to open the bathroom door. Holderfield sat down on the toilet seat and screamed, "I'm going to end it now," and then cut her neck with the knife. (R. 112.) When she started cutting her neck, Officer Partridge used his taser to tase Holderfield. As the taser stunned Holderfield, Officer Barnett and Sgt. Brian Baker, who had arrived as Holderfield entered the bathroom, grabbed Holderfield's arms and attempted to get the knife away from her. Holderfield began swinging her arms at the officers. Officer Partridge tased Holderfield again and, at that point, Sgt. Baker and Officer Barnett were able to wrestle the knife out of Holderfield's hand.
After the officers were able to get the knife away from Holderfield, she fell to the far side of the toilet and continued resisting and kicking the officers. The officers struggled to get her out of the bathroom. Holderfield was bleeding profusely from her wrist and neck, and she needed medical attention. Sgt. Baker was eventually able to get handcuffs on Holderfield in front of her body. Sgt. Baker held Holderfield's arms and Officer Barnett held her legs, and the officers were able to pull her out of the bathroom. During the struggle, Holderfield "yanked her legs toward her" and Officer Barnett injured his shoulder. (R. 42.) Once the officers had Holderfield *749 in the hallway, Brad Cantrell, a paramedic and fireman with the City of Gardendale Fire and Rescue, arrived and began talking to Holderfield. Cantrell bandaged Holderfield's neck and informed her that she would have to go to the hospital. Holderfield then stated that she was not going and she began kicking and swinging her arms in an attempt to keep the officers and paramedics away from her as they tried to place her on a stretcher. Officer Barnett, Sgt. Baker, and Cantrell struggled to get Holderfield outside the residence. When the officers started moving Holderfield outside, Holderfield bit Officer Barnett three times. She bit him twice on the fingers and once on the hand. Officer Barnett was wearing medical gloves at the time, which ripped when Holderfield bit him. Holderfield was later restrained on the stretcher. Officer Barnett indicated that all three officers were saturated in Holderfield's blood. When one of the paramedics asked Holderfield if she had any diseases, she indicated that she possibly had hepatitis, and she laughed as she stated that the officers had hepatitis now. Following the incident, the officers had to submit to blood testing for six months to test for infectious diseases.
Holderfield testified on her own behalf at trial. She claimed that she remembered being in the house with her boyfriend on the night of the incident and then did not remember anything that happened until she woke up lying in the bathroom with "four to five men standing over her in dark clothing." (R. 98.) Holderfield stated that when she woke up, she realized there were taser prongs in her chest and stomach and she ripped them off. She claimed that, when she pulled the prongs off, "the larger gentleman in front of [her] turned and punched [her] across the face." (R. 99.) The next thing she remembered was waking up in the hospital the next morning.
On appeal, Holderfield claimed that the trial court abused its discretion when it ordered her to pay $2,219.99 in restitution because, she says, the State did not present any evidence to prove that her criminal conduct caused the pecuniary loss and that the court erred in ordering her to pay for medical expenses that were not proximately caused by the criminal conduct that was the basis of the prosecution. Holderfield also argued that this Court has jurisdiction to hear her appeal in this case because the notice of appeal was timely filed.
On original submission before this Court, this Court, by order, dismissed Holderfield's appeal as untimely, finding that Holderfield's motion to set aside the restitution order was not equivalent to a motion for a new trial and, thus, did not toll the time for filing an appeal. Holderfield v. State, (No. CR-14-1250, October 22 2015), 222 So.3d 426 (table). However, on certiorari review, the Alabama Supreme Court reversed this Court's decision and held that a motion to modify or set aside a restitution order, if filed within 30 days after pronouncement of sentence, tolls the time for filing a notice of appeal and, thus, the Supreme Court remanded the case to this Court for proceedings consistent with its opinion. See Ex parte Holderfield, 255 So.3d 743 (Ala. 2016). Accordingly, we now address Holderfield's issues.
First, Holderfield claims that the trial court abused its discretion when it ordered her to pay $2,219.99 in restitution because, she says, the State did not present any legal evidence to prove that her criminal conduct caused the pecuniary loss. Specifically, Holderfield maintains that, although there was "some mention in the record of an invoice that the State based its restitution request on, the invoice was never submitted to the court for consideration," and, thus, the court ordered restitution without *750 reviewing any documents or hearing any testimony and did not base its decision to do so on "legal evidence." (Holderfield's brief, at 11.)
However, as the State contends, this specific argument was not properly preserved for appellate review. At the sentencing hearing, the following conversation was had in open court:
"[Prosecutor:] Your Honor, there's also some restitution due.
"THE COURT: ... How much restitution?
"[Prosecutor:] It is $2,219.99 to the Municipal Workers Compensation Fund for Gardendale.
"THE COURT: If you'll write out that name and address for me.
"[Prosecutor:] Yes, Your Honor.
"THE COURT: I'll put it in the order. You're given credit for any and all time actually served.
"[Defense counsel:] Your Honor?
"THE COURT: What is it?
"[Defense counsel:] Will we have an opportunity to have a hearing on that restitution amount?
"THE COURT: What part of it do you not agree with?
"[Defense counsel:] I don't know. I haven't been presented any kind of evidence of where that figure comes from.
"THE COURT: What do you have?
"[Prosecutor:] I have the invoice from the City of Gardendale for the monies that they paid out for all of the testing of blood for the officers.
"THE COURT: Show it to him.
"[Prosecutor:] For six months. It's just the figures from the City, not the hospital records. And that does not include any, other than the testing.
"THE COURT: Does it include that officer's expenses from the injury, the shoulder injury?
"[Prosecutor:] It does not, Your Honor.
"[Defense counsel:] Judge, just looking at this, I don't know much about the medical side-
"THE COURT: Let me see the two of you up here just a minute.
"(Side-bar conference, off the record.)"
(R. 157-158.) The sentencing hearing was then concluded and the circuit court ordered Holderfield to pay $2,219.99 in restitution to the "City of Gardendale Municipal Works Comp Fund." (C. 14.)
Following the circuit court's order of restitution, Holderfield filed her motion to set aside the restitution order, arguing that "[t]here was no evidence presented on the record to indicate how that amount was determined to be the appropriate amount of restitution." (C. 82.) A hearing was granted. However, at the hearing on the motion to set aside the restitution order, Holderfield's defense counsel argued only that the restitution was improper because it must be established that Holderfield's criminal act was the proximate cause of the injuries sustained and that the amount improperly included damages to additional officers other than the officer she injured and was charged with having assaulted. (R. 163.)
We recognize that Holderfield's counsel questioned whether a separate restitution hearing would be held at the sentencing hearing and noted that he had not received any legal evidence of where the restitution amount came from. However, even assuming that counsel's question was a proper objection, the court instructed the State to show defense counsel the invoice it was relying on, and defense counsel failed to obtain an adverse ruling from the court. Likewise, Holderfield argued in her motion to set aside the restitution order that no *751 evidence was presented to indicate how the restitution amount was calculated; however, at the hearing on her motion to set aside the restitution order, Holderfield's counsel argued only that the amount of restitution was too high because it included the injuries to the additional officers. Holderfield did not argue that the State failed to prove the amount using "legal evidence." Because Holderfield's counsel did not challenge the restitution amount on the ground that the State failed to present sufficient evidence of the restitution amount, this specific claim was not raised in the trial court, and it was not properly preserved for appellate review. See D.W.L. v. State, 821 So.2d 246, 249 (Ala. Crim. App. 2001). See McWhorter v. State, 142 So.3d 1195, 1234 (Ala. Crim. App. 2011) (" 'The general rules of preservation apply to Rule 32 proceedings.' Boyd v. State, 913 So.2d 1113, 1123 (Ala. Crim. App. 2003).").
Next, Holderfield alleges that the circuit court erred in ordering her to pay for medical expenses that were not proximately caused by the criminal conduct that was the basis of the prosecution. Specifically, Holderfield claims that her criminal activity of intentionally causing injury to Officer Barnett by biting him on the hand was not the proximate cause of any losses associated with Officer Barnett's shoulder injury or of any costs associated with the blood testing of the two other officers who were exposed to her blood when they responded to her suicide attempt. The State argues that the restitution award was proper because "the intentional injury to Barnett occurred during a physical struggle between [Holderfield] and three officers, including Barnett, who were trying to prevent [Holderfield], who had cut her throat, from committing suicide," and, thus, "the struggle, resulting in the officers being covered with the blood that necessitated the testing, established a necessary element of the crime, namely that [Holderfield] intended to prevent the officers from performing their duty in preventing suicide." (State's brief, at 19-20.)
In the present case, Holderfield was charged and convicted of second-degree assault, a violation of § 13A-6-21(a)(4), Ala. Code 1975, which provides, in pertinent part, that "[a] person commits the crime of assault in the second degree if the person...with intent to prevent a peace officer, as defined in Section 36-21-60, [Ala. Code 1975 ], .... from performing a lawful duty, he or she intends to cause physical injury and he or she causes physical injury to any person." The indictment charging Holderfield specifically stated that Holderfield "did, with intent to prevent a peace officer ... from performing a lawful duty, intend to cause physical injury and caused physical injury to Chris Barnett ..." (C. 24.)
" 'The particular amount of restitution is a matter which must of necessity be left almost totally to the discretion of the trial judge.' Clare v. State, 456 So.2d 355, 356 (Ala. Crim. App. 1983), aff'd, 456 So.2d 357 (Ala. 1984). Moreover, the exercise of '[t]hat discretion should not be overturned except in cases of clear flagrant abuse.' Id."
Ex parte Stutts, 897 So.2d 431, 433 (Ala. 2004). "At a restitution hearing, the trial judge need be convinced only by a preponderance of [the] evidence." Hagler v. State, 625 So.2d 1190, 1191 (Ala. Crim. App. 1993).
Section 15-18-65, Ala. Code 1975, states "that all perpetrators of criminal activity or conduct shall be required to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof." The phrase "criminal activity" is defined as "[a]ny offense with respect *752 to which the defendant is convicted or any other criminal conduct admitted by the defendant." § 15-18-66, Ala. Code 1975. Additionally, before a court may award restitution, the State must establish that the defendant's criminal activity was the proximate cause of the victim's pecuniary loss, damage, or injury. Reeves v. State, 24 So.3d 549, 553 (Ala. Crim. App. 2009) ; Moore v. State, 706 So.2d 265, 267 (Ala. Crim. App. 1996) ; Richardson v. State, 603 So.2d 1132, 1133 (Ala. Crim. App. 1992) ; Strough v. State, 501 So.2d 488, 491 (Ala. Crim. App. 1986).
"[U]nder Alabama's restitution statute, the defendant could be ordered to pay restitution to the victim of his crime only if one of two conditions existed: (1) his victim suffered direct or indirect pecuniary loss as a result of the criminal activity of which the defendant has been convicted, or (2) he admitted to other criminal conduct during the proceedings that was the proximate cause of the victim's pecuniary loss or damages."
B.M.J. v. State, 952 So.2d 1174, 1176 (Ala. Crim. App. 2006). In Strough, this Court defined proximate cause as follows:
" 'The proximate cause of an injury is the primary moving cause without which it would not have occurred, but which, in the natural and probable sequence of events, produces the injury.' City of Mobile v. Havard, 289 Ala. 532, 538, 268 So.2d 805 (Ala. 1972) ; see also, Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala. 1976). As our Supreme Court observed in Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975), foreseeability is the cornerstone of proximate cause. This does not mean, however, that the defendant must have actually foreseen the particular injury which resulted from his action. Rather, the injury sustained by the victim must have been of such a nature that a reasonable person could have foreseen or anticipated that the injury might occur as a natural consequence of the action. Williams v. Woodman, 424 So.2d 611 (Ala. 1982) ; Prescott v. Martin, 331 So.2d 240 (Ala. 1976). Where an injury is caused by intentional conduct, the rules of proximate cause are more liberally applied. Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala. 1983)."
501 So.2d at 491.
Holderfield cites several cases in support of her argument, including Lamar v. State, 803 So.2d 576 (Ala. Crim. App. 2001), which is discussed in Jones v. State, 71 So.3d 36 (Ala. Crim. App. 2009) :
"In Lamar [v. State, 803 So.2d 576 (Ala. Crim. App. 2001) ], this Court reversed the trial court's restitution award of $25,000 to Rosalyn Sellers and her son for injuries they had sustained in an automobile accident. Lamar had entered a guilty plea to the offense of leaving the scene of an accident, a violation of § 32-10-1, Ala. Code 1975, and he argued on appeal that 'the circuit court improperly ordered him to pay restitution because, he argue[d], the injuries the victims sustained were not "proximately caused" by his leaving the scene.' Lamar, 803 So.2d at 577. In our opinion reversing the trial court's restitution award, this Court stated:
" 'Lamar's plea of guilty to the offense defined in §§ 32-10-1 and 32-10-2[, Ala. Code 1975,] did not result in a conviction for causing the accident that resulted in the injuries to Sellers and her son, and, therefore, his guilty plea could not authorize the trial court to sentence him to pay restitution for injuries sustained as a result of the accident.
" '....
*753 " 'The trial court could also have ordered Lamar to pay restitution for "any other criminal conduct' he admitted during these proceedings that was the proximate cause of the victims" injuries. See § 15-18-66[, Ala. Code 1975 ]. However, at no point during the plea colloquy, the sentencing hearing, or the restitution hearing did Lamar ever admit to having caused the accident resulting in the victims' injuries. Although evidence was presented during both the sentencing and restitution hearings that Lamar had caused the accident because he was speeding and he struck a turning vehicle, Lamar himself never made such an admission. Under the plain language of § 15-18-66, restitution can be ordered only for "other criminal conduct" that is admitted by the defendant. This court has previously held that an admission, as defined in § 15-18-66, requires "a judicial admission sufficient to support a conviction before restitution can be ordered." Day v. State, [557 So.2d 1318, 1319 (Ala. Crim. App. 1989) ]. Therefore, the trial court had no statutory authorization to order Lamar to pay restitution to Sellers and her son for the injuries they sustained during the accident, because Lamar never admitted any conduct that could be said to be the proximate cause of their injuries.'
" Lamar, 803 So.2d at 578-79 (footnote omitted). See also Best, supra (holding restitution order improper where there was evidence that victim suffered pecuniary loss indirectly in connection with defendant's criminal activity, absent proof that defendant had stolen the personal property or had possession of it); Brothers v. State, 531 So.2d 317 (Ala. Crim. App. 1988) (concluding that, where defendant pleaded guilty to first-degree theft of property and third-degree burglary and was ordered to pay restitution for damage to property destroyed in a fire resulting from arson, the burning of the house was neither direct nor indirect result of theft or burglary). Cf. Ex parte Clare, 456 So.2d 357 (Ala. 1984) (upholding restitution order where defendant admitted embezzling moneys in an amount greater than that stated in the indictment); Moore v. State, 706 So.2d 265 (Ala. Crim. App. 1996) (upholding restitution order where defendant agreed pursuant to plea bargain to compensate all victims of his theft); Pollard v. State, 593 So.2d 95 (Ala. Crim. App. 1991) (upholding restitution order where defendant pleaded guilty to possession of a forged instrument and admitted conduct during sentencing hearing)."
71 So.3d at 39-40.
In the present case, Holderfield was found guilty of the second-degree assault of Officer Barnett after she bit his hand during a struggle in which the officers were trying to prevent her from committing suicide, and Officer Barnett was covered in Holderfield's blood when she bit him. Holderfield later informed the paramedics that she possibly had hepatitis and, as a result, Officer Barnett had to participate in blood testing for the following six months to ensure that he did not contract any infectious disease. Therefore, there was sufficient evidence indicating that Holderfield's criminal activity was the proximate cause of the loss incurred as a result of Officer Barnett's blood testing.
However, Holderfield's criminal activity of assaulting Officer Barnett was not the proximate cause of the loss incurred from the blood testing of the other two officers. In Day v. State, 557 So.2d 1318 (Ala. Crim. App. 1989), the appellant shot one victim, Patterson, in her leg and then chased a second victim, Johnson, outside a *754 house and shot him in the leg and shoulder. The appellant was convicted of the attempted murder of Johnson, and the circuit court ordered the appellant to pay restitution to Johnson and Patterson for their injuries. In determining whether the restitution award to Patterson was proper, this Court stated:
"If it could be said that Patterson's injury arose from appellant's attempted murder of Johnson, for which he was convicted, then she could properly be characterized as a victim, and restitution to her would be proper. However, when one suffers a loss which resulted from conduct that was not the subject of the defendant's prosecution and for which a subsequent prosecution would be necessary to determine the defendant's criminal liability, if any, we hold that an order of restitution to that person is no more appropriate than would be the sentencing of the defendant to a term of imprisonment without first affording him the basic constitutional guarantees of a trial and verdict on those charges. Appellant should not have been ordered to pay restitution to Patterson."
Day, 557 So.2d at 1319. Similarly, in Heupel v. State, 113 So.3d 695 (Ala. Crim. App. 2012), this Court held that a restitution award requiring the appellant to pay restitution for missing currency was improper because the appellant was convicted only of theft of a gun and did not admit to the theft of the currency.
Here, although there was evidence in the record tending to show that Holderfield's intentional act of cutting her neck did cause the officers to be covered in her blood and have to submit to blood testing after the incident, she was not on trial for causing injury to herself or the other officers, nor did she admit to any conduct that would have resulted in the other officers being covered in her blood. Instead, the record indicates that the officers were exposed to Holderfield's blood before her criminal offense in the present case and, thus, would have had to submit to blood testing regardless of the assault of Officer Barnett. Thus, although we recognize that, in aiding Holderfield, the other two officers incurred the costs of the blood testing and that the officers are entitled to be reimbursed for costs of injuries suffered while providing aid, the injury must result from the charged offense. Holderfield's criminal activity of assaulting Officer Barnett was not the proximate cause of the loss incurred from the blood testing of the other two officers, as is required under current Alabama law. Although, if the charged offense had related to Holderfield's suicide attempt or resisting arrest, her actions may have resulted in the officers' injuries so as to possibly legally allow restitution, this was not the case. Moreover, restitution would have been due if Holderfield had admitted the conduct that caused the injury to the officers. However, under the facts of this particular case, we find that the trial court abused its discretion when it ordered Holderfield to pay restitution to the City of Gardendale Municipal Workers Compensation Fund for the costs incurred for blood testing the other officers.
To the extent that Holderfield is challenging any restitution awarded for the loss incurred as a result of Officer Barnett's shoulder injury, although we do not have an itemized list of the respective costs that add up to the total restitution amount, the record from the hearing on whether to set aside the restitution award indicates that the restitution amount does not include damages resulting from the shoulder injury. See (R. 158, 162-63.)
In light of the foregoing, the circuit court improperly ordered Holderfield to pay restitution to the City of Gardendale *755 Municipal Workers Compensation Fund for the blood testing of Officer Partridge and Sgt. Baker. Consequently, we remand this case for the circuit court to vacate that part of its order requiring Holderfield to pay for the additional blood testing. Due return shall be made to this Court within 42 days of this opinion.
REMANDED WITH INSTRUCTIONS.*
Welch, Kellum[1] , and Joiner, JJ., concur. Windom, P.J., dissents.

Although Judge Kellum was not present when this case was orally argued, she reviewed the tape of the oral argument held on January 31, 2017.
* Note from the reporter of decisions: On December 8, 2017, on return to remand, the Court of Criminal Appeals affirmed, without opinion.