STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-895

INTERNATIONAL PAPER COMPANY, INC.

VERSUS

SHERIFF WILLIAM EARL HILTON, ET AL.

**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 211,845-"D"
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

AFFIRMED.

Steven G. Durio
Robert L. Broussard
Durio, McGoffin, Stagg & Ackermann
P. O. Box 51308
Lafayette, LA 70505-1308
(337) 233-0300
Counsel for Plaintiff/Appellant:
    International Paper Company, Inc.

**Jerry R. Osborne**
**365 Canal St., Suite 2600**
**New Orleans, LA 70130**
**(504) 568-1249**
**Counsel for Defendants/Appellees:**
     **Sheriff William Earl Hilton**
     **Ralph Gill, Assessor**
     **Ward 9 Recreation District**

**Robert L. Bussey**
**Bussey & Lauve**
**P. O. Box 307**
**Alexandria, LA 71309-0307**
**(318) 449-1937**
**Counsel for Defendants/Appellees:**
     **Sheriff William Earl Hilton**
     **Ralph Gill, Assessor**
     **Ward 9 Recreation District**

**Dannie P. Garrett, III**
**Louisiana Municipal Assoc.**
**700 N. 10th Street**
**Baton Rouge, LA 70821-0000**
**(225) 343-2835**
**Counsel for Amicus Curiae**
     **Police Jury Association of Louisiana**

GREMILLION, Judge.

In this case, the plaintiff, International Paper Company, Inc. (IP), appeals the trial court's judgment holding that the assessment of ad valorem taxes in favor of the defendants, Sheriff William Earl Hilton, in his capacity as tax collector for Rapides Parish; Ralph Gill, in his capacity as assessor of Rapides Parish; and Richard Ieyoub, in his capacity as Attorney General for the State of Louisiana, was proper. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2003, IP filed a petition for refund of ad valorem taxes paid under protest claiming that its property is located in an "industrial area" and is, therefore, not subject to taxation pursuant to La.R.S. 33:130.15, which was repealed and replaced by La.R.S. 51:1202.

IP's industrial area was created in November 1973, and the recreation district was created in October 1976. IP urged that it has provided all of the services enumerated in La.R.S. 51:1202 (formerly La.R.S. 33:130.15), such as street lighting, water service, and garbage collection. The defendants filed an exception of prescription and peremption. Following a hearing on the exceptions, the trial court granted the exceptions on a limited basis pertaining to the validity of certain election and bond issues, but reserved the issue of whether IP should be subject to taxation.

The defendants filed a motion for summary judgment urging that IP's petition for refund of taxes should be dismissed. IP filed a motion for summary judgment urging that there was no genuine issue of fact that it was entitled to a refund. Following a hearing, the trial court granted summary judgment in favor of the

1

defendants, and denied IP's motion for summary judgment without assigning reasons.

IP now appeals.

## ASSIGNMENTS OF ERROR

IP assigns as error:

1. The trial court's failure to find that industrial areas are not subject to annexation, incorporation, or inclusion by any "newly created" municipality or district, and therefore, that IP's property in Ward 9 is not "property subject to taxation" by the "newly created" Ward 9 recreation district, pursuant to La.R.S. 33:130.15-130.16 and La.R.S. 51:1202-1203.

2. The trial court's failure to find that the Resolution of the Police Jury establishing the industrial area was a contract providing that the IP plant would not be subjected to ad valorem tax by any newly created political subdivision.

3. The trial court's failure to find that IP is due a refund for all Ward 9 Recreation District taxes paid under protest with interest at the actual rate earned on money paid under protest in the escrow account during the period from the date such funds were received by the officer to the date of such refund, pursuant to La.R.S. 47:2110, and its failure to declare that the industrial area should be removed from the assessment rolls of the recreation district.

## DISCUSSION

Appellate review of a question of law is simply a decision as to whether the trial court's decision is legally correct or incorrect. *Jim Walter Homes, Inc. v. Jessen*, 98-1685 (La.App. 3 Cir. 3/31/99), 732 So.2d 699. If the trial court's decision was based on its erroneous application of law, its decision is not entitled to deference by the reviewing court. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983). When an appellate court finds that a reversible error of law was made in the lower court, it must redetermine the facts de novo from the entire record and render a

2

judgment on the merits.  *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993).

## ASSIGNMENT OF ERROR NUMBER ONE

The issues presented in this case are difficult partially due to the poorly worded statutes enacted by the legislature and its failure to fully repeal certain other statutes.  IP's argument primarily relies on a literal reading of the statutes in question.  However, having reviewed the statutes, jurisprudence, and briefs, we find that the trial court's grant of summary judgment in favor of the defendant was correct.  We note that the industrial area in question was created in November 1973, and the recreation district was created in October 1976.

Louisiana Revised Statute 33:130.15, which was enacted in 1964, but repealed in 1995, stated:

> Those industries located within the boundaries of any industrial area shall furnish and maintain individually or as a group the following services usually provided by parish or local governments: the construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, and garbage and refuse collection and disposal. *Any industrial area which furnishes and maintains all of the above enumerated services shall not be subject to annexation.*

(Emphasis added).

Louisiana Revised Statue 33:130.16, which has not been expressly repealed, states:

> No portion of an industrial area may be included within *any newly created special service district* furnishing any of the services enumerated in R.S. 33:130.15.

(Emphasis added).

Louisiana Revised Statute 51:1202, which was enacted in 1995, replaced La.R.S. 33:130:15, and states:

Those industries located within the boundaries of any industrial area established pursuant to Subpart b-1 of Part IV of Chapter 1 of Title 33 of the Louisiana Revised Statutes of 1950 shall furnish and maintain individually or as a group the following services usually provided by parish or local governments: the construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, and garbage and refuse collection and disposal. *Any industrial area which furnishes and maintains all of the above enumerated services shall not be subject to annexation or incorporation.* Any industrial area heretofore designated which complies with the provisions hereof shall be considered validly designated hereunder and any agreement or resolution with respect thereto shall be considered to include all services herein enumerated though not specifically included therein. Agreements between industries located within the boundaries of an industrial area and the governing authority of the parish and/or any municipality or municipalities situated therein may be made for mutual fire protection in grave emergencies.

(Emphasis added).

Louisiana Revised Statute 51:1203, also enacted in 1995, states:

No portion of an industrial area that provides any of the services enumerated in R.S. 51:1202 shall be included within *any newly created municipality.*

(Emphasis added).

The Louisiana Supreme Court recently summarized the rules of statutory interpretation in *Pumphrey v. City of New Orleans*, 05-979, p. 10-12 (La. 4/4/06), 925 So.2d 1202, 1209-10 (citations omitted):

The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the Legislature's intent.

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature. When the language of the law is susceptible of different

4

meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing meaning. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other.

The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it. The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it. This is because the rules of statutory construction require that the general intent and purpose of the Legislature in enacting the law must, if possible, be given effect. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. It is likewise presumed that the intention of the legislative branch is to achieve a consistent body of law.

La.Civ.Code art. 13 provides, where two statutes deal with the same subject matter, they should be harmonized if possible. However, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Under general rules of statutory construction, the latest expression of the legislative will is considered controlling and prior enactments in conflict are considered as tacitly repealed in the absence of an express repealing clause.

## LOUISIANA REVISED STATUTES 33:130.15

Accordingly, pursuant to Article 13 and *Pumphrey*, and the rules of statutory construction, we find that La.R.S. 33:130.15 has been tacitly repealed and replaced by La.R.S. 51:1203.

IP's main argument is that by providing the enumerated services set forth in La.R.S. 51:120, it is exempt from any inclusion into a special service district/municipality/other type of governmental entity, and, is therefore, exempt from taxes because it cannot be included in the jurisdiction. However, pursuant to Article

5

13 and the analysis in *Pumphrey*, La.R.S. 33.130.16 has been tacitly repealed, which leaves La.R.S. 51:1203 as the last expression of legislative will. A plain reading of La.R.S. 51:1203 leads to the conclusion that any business located in an industrial area that provides the listed services for itself is, thereafter, immune from being included in *any newly created municipality*. A simple analysis would lead to the conclusion that the recreation district is not a municipality, and therefore, La.R.S. 51:1203 has no application to the facts at hand, and IP is subject to the recreation district's ad valorem tax. Although we disagree with IP's assertion that a recreation district falls within the definition of a municipality, we find the distinction in this instance irrelevant as fully explained below.

In interpreting the meaning of these statutes, the question boils down to whether the mere existence of an industrial area provides a blanket tax exemption due to exclusion from any newly created municipality or whether the nature of the services provided by the district determines exclusion. There have been few cases involving the statutes in question, however, we addressed similar issues in a case involving the same plaintiff in *International Paper Co. v. Hilton*, 96-212 (La.App. 3 Cir. 12/11/96), 685 So.2d 567, *writ denied*, 97-0119 (La. 3/7/97), 689 So.2d 1377 (*IP1*). In *IP1,* the trial court granted summary judgment in favor of IP in a suit for the refund of ad valorem taxes assessed for the benefit of Fire Protection District Number 4. On appeal, we concluded that the trial court improperly granted summary judgment because we found there was a genuine issue of material fact as to whether the police jury intended to create a new district providing new services or reorganize an existing fire protection district with existing services. We further expounded as

6

to La.R.S. 33:130.16, that it is:

> [N]ot an exemption from taxation but a limitation upon a special service district's power to impose a tax upon an "industrial area" in the first place. An exemption is, by definition, an exception to an entity's obligation to otherwise pay an existing, legally enacted tax. La.R.S. 33:130.16 is not an exemption from taxation; it imposes a prohibition on a newly created special service district's jurisdictional power to tax an "industrial area."

*Id.* at 574.[1]

Additionally, we quoted the trial court's judgment, which stated:

> Obviously, the primary purpose of RS 33:130.15 and 130.16 is not to offer tax incentives or to grant immunity or exemptions from taxation, but to prevent those industries which provide their own utilities and other customary public services from being *subsequently* annexed into or included within any entity which also provides these services.

*Id*. at 569.

Interestingly, IP argues that *IP1* supports its proposition that the nature of the services is irrelevant. Although counsel puts forth a persuasive argument, we are still undeterred in our conclusion that the basis of the exclusion is the benefit of avoiding double taxation for services a business in an industrial area already provides for itself.

In *Allied Signal v. Jackson*, 96-0138, p. 11 (La.App. 1 Cir. 2/14/97), 691 So.2d 150, 158, *writ denied*, 97-0660 (La. 4/25/97), 692 So.2d 1091, the appellate court affirmed the trial court's finding that certain industrial areas could not be included in the area proposed to be incorporated as the municipality of Geismar and stated:

---

[1] The supreme court in *In re Pitre*, 93-2322 (La. 1/14/94), 630 So.2d 700, found that a statute which provided an exemption from ad valorem taxation was in derogation of the 1974 Louisiana Constitution and was, therefore, unconstitutional.

7

The Louisiana constitution provides that the legislature may authorize parishes to create and define industrial areas within their boundaries in accordance with procedures and subject to regulations set forth by the legislature. LSA-Const. Art. VI, § 18. In 1964, the legislature enacted LSA-R.S. 33:130.11 et seq. pertaining to industrial areas, in which it granted parish governing authorities the ability to establish industrial areas composed of territory wholly within the parish boundaries and without the boundaries of any municipality. LSA-R.S. 33:130.11. Subject to the written approval of 51% in interest of the landowners of the proposed industrial area, such areas may include any compact body of land which is used exclusively for industrial purposes or is primarily suited for industrial development. LSA-R.S. 33:130.11 and 130.12. Industries within a designated industrial area are required to furnish and maintain the following services: the construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection and garbage and refuse collection and disposal. LSA-R.S. 51:1202, formerly LSA-R.S. 33:130.15. *The statute was enacted to enhance industrial development by allowing industries to provide for themselves certain services normally provided by parish and local governments, thus freeing the parish or local government from having to provide these services. In return for providing these services, these industries are not subject to annexation by an existing municipality or incorporation into a newly formed municipality.* LSA-R.S. 51:1202 and 1203.

(Emphasis added).

The defendants then argued that La.R.S. 51:1202 and 1203 violate a municipality's constitutionally granted power to assess an ad valorem tax and are, therefore, unconstitutional. The appellate court disagreed stating:

Clearly, the residents of an unincorporated area do not have greater rights than the residents of a municipal corporation. Like municipal corporations, their powers are also within the province of the legislature, such that the legislature is free to limit the territory that is subject to incorporation. Pursuant to its authority under LSA-Const. art. VI, §§ 2 and 18, the legislature certainly has the power to limit the territory to be included in a new municipality. By enacting LSA-R.S. 33:130.11, 51:1202 and 51:1203, the legislature has exercised powers given to it by the state constitution.

*Id.* at 159.

8

We agree with the trial court's assertions in *IP1* and the reasoning of *Allied Signal.* In ascertaining the intent of the legislature and in reading all of the statutes in pari materia, we do not believe that the legislature intended to provide a blanket tax exemption for businesses in an industrial area. Dispensing with all forms of taxation necessary to ensure that parish needs and improvements are met, would, as the police jury pointed out in its amicus curiae brief to this court, cause complete chaos across the State of Louisiana. Further, if the legislature intended that businesses in industrial areas should be exempt from any further taxation whatsoever by excluding those areas from being included in various districts or municipalities, it needs to make its intentions clearer in its legislation. Our analysis of the various statutes leads us to conclude that the legislature intended to exempt an industrial area *only* from being annexed, incorporated, or included in a municipality if the entity located in the industrial area already provides the various services for itself so that it may not have to pay the governmental entity for services that it has already provided. We believe the legislature changed the terminology to "municipality" in La.R.S. 51:1203 because a municipality, as opposed to a special service district, is the governmental body that usually provides the services enumerated.

IP further argues that a "municipality" and a special service district such as the recreation district at issue are one in the same for purposes of the statute. Our interpretation of the statute is that the legislature intended to exclude industrial areas from being taxed for services it already provides for itself. On the other hand, it does not exempt the industrial area from any and all taxes, such as those for a recreation district. Because the issue here is taxes for a recreation district, as opposed to taxes

9

levied to provide one of the enumerated services, we find that the distinction between a municipality and a special service district is irrelevant. The tacit repeal of La.R.S. 33:130.15, as replaced by La.R.S. 52:1203, would only confer the exclusion from municipalities.

IP strongly argues that *Allied* stands for the proposition that La.R.S. 52:1203 assures against subsequent taxation regardless of the nature of the service for which the taxation is based. We disagree. As we quoted from *Allied* above, we hold the exclusion from the municipality is based on the fact that the business located in the industrial area has provided these basic services for itself, "thus freeing the parish or local government from having to provide these services," via a general ad valorem tax. If our interpretation violates legislative intent, the legislature may clarify the breadth of the benefits it seeks to give to businesses located in an industrial area by subsequent legislation.

## ASSIGNMENT OF ERROR NUMBER TWO

IP's second assignment of error is essentially a reiteration of its first. IP argues that it has contractual rights based on the resolution of the Rapides Parish Police Jury which created the industrial area in which IP is located. The resolution merely confers the status of "industrial area" with the benefits of the statutes in question. The question remains, however, as to the legislature's intent in creating the statutes. Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER THREE

Based on our previous findings, we find the trial court did not err in failing to order the defendants to return the sums paid in protest by IP. Accordingly,

this assignment of error is without merit.

## CONCLUSION

The judgment of the trial court granting summary judgment in favor of the defendants-appellees, Sheriff William Earl Hilton, in his capacity as tax collector for Rapides Parish; Ralph Gill in his capacity as assessor of Rapides Parish; and Richard Ieyoub, in his capacity as Attorney General for the State of Louisiana, is affirmed. All costs of this appeal are assessed against the plaintiff-appellant, International Paper Company, Inc.

**AFFIRMED.**