# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 17-735 consolidated with CA 17-736

**BRANDI BILLEAUDEAU, ET AL.**

**VERSUS**

**OPELOUSAS GENERAL HOSPITAL AUTHORITY, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 11-C-5112-D C/W NO. 13-C-0097-D
HONORABLE D. JASON MECHE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**CANDYCE G. PERRET**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Billy H. Ezell, Van H. Kyzar, and Candyce G. Perret, Judges.

**AFFIRMED.**

**Kara Hadican Samuels**
**Tiffany A. Morales**
**Kara Hadican Samuels & Associates, L.L.C.**
**4004 Canal St.**
**New Orleans, LA 70119**
**(504) 558-9478**
**COUNSEL FOR PLAINTIFFS-APPELLANTS:**
    **Brandi Billeaudeau**
    **Joseph Billeaudeau**
    **Veronica Billeaudeau**

**Jennifer L. Thornton**
**Christian S. Chaney**
**Stanley, Reuter, Ross, Thornton & Alford, L.L.C.**
**909 Poydras, Suite 2500**
**New Orleans, LA 70112**
**(504) 523-1580**
**COUNSEL FOR PLAINTIFFS-APPELLANTS:**
    **Joseph Billeaudeau**
    **Veronica Billeaudeau**
    **Brandi Billeaudeau**

**Joseph L. McReynolds**
**John Jerry Glas**
**Karen P. Holland**
**Deutsch, Kerrigan & Stiles, L.L.P.**
**755 Magazine St.**
**New Orleans, LA 70130-3672**
**(504) 581-5141**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Opelousas General Hospital Authority**

**Nicholas Gachassin, III**
**Brandon M. Rhodes**
**Gary J. Delahoussaye**
**Gachassin Law Firm, L.L.C.**
**P. O. Box 80369**
**Lafayette, LA 70598-0369**
**(337) 235-4576**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Opelousas General Hospital Authority**

**J. Gregory Vidrine**
**Mahtook & LaFleur**
**P. O. Box 617**
**Ville Platte, LA 70586**
**(337) 363-6211**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Opelousas General Hospital Authority**
**Jacob E. Favaron**
**Allen & Gooch**

**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANTS-APPELLEES:**
    **Dr. Kondilo Skirlis-Zavala**
    **Louisiana Patients' Compensation Fund**
    **Opelousas General Hospital**

**George P. Hebbler, Jr.**
**Thomas M. Young**
**Frances I. Mcginnis**
**Hebbler & Giordano, L.L.C.**
**3501 N. Causeway Blvd, #400**
**Metairie, LA 70002**
**(504) 833-8007**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Nautilus Ins. Co.**

**PERRET, Judge.**

Veronica and Joseph Billeaudeau, individually and on behalf of Brandi Billeaudeau (collectively "Plaintiffs"), appeal a trial court judgment that granted Opelousas General Hospital Authority's (hereinafter, "OGH") and Nautilus Insurance Company's (collectively "Defendants") Motion for Partial Summary Judgment finding that the Louisiana Governmental Claims Act is controlling with respect to Plaintiffs' claim of negligent credentialing. Plaintiffs also appeal the trial court's judgment that denied their Motion to Declare La.R.S. 13:5102(B)(1) unconstitutional. For the following reasons, we affirm the July 5, 2017 trial court judgment.

**FACTS:**

The underlying facts of this case were discussed previously in *Billeaudeau v. Opelousas Gen. Hosp.*, 16-846, pp. 2-3 (La. 10/19/16), 218 So.3d 513, 514-15 (footnotes omitted), as follows:

> On June 20, 2010, Brandi, a woman thirty-four years of age with Down syndrome, was taken to OGH by her parents, Veronica and Joseph Billeaudeau, after she collapsed at home. Upon arrival at the ED, Dr. Zavala diagnosed Brandi with focal motor seizure. Dr. Zavala ordered the administration of anti-seizure medication and a CT scan, which was reported as normal.

> The Billeaudeaus disagreed with the doctor's diagnosis. Thinking their daughter had suffered a stroke, they asked that Brandi be given tPA (t-plasminogen activator), a treatment for stroke victims. However, according to plaintiffs' allegations, Dr. Zavala informed them their daughter was not a candidate for tPA. The Billeaudeaus then requested Brandi be transferred to Our Lady of Lourdes (OLOL) in Lafayette. Dr. Zavala arranged for Brandi's transfer to OLOL, where she was given tPA over four hours after she suffered what was ultimately determined to be a stroke. Brandi survived the stroke but unfortunately suffered severe, irreversible brain damage.

Veronica, individually and as Brandi's curatrix, along with Joseph pursued a claim under the LMMA [Louisiana Medical Malpractice Act] and brought suit against OGH, among other defendants, specifically alleging:

Defendant, Opelousas General Hospital, is liable unto Petitioners because Ms. Billeaudeau's injuries and damages, which will be specified hereinafter, were proximately and legally caused by the fault, including negligence, of Opelousas General Hospital and its officers, agents, employees, and those for whom it is legally responsible, including the following negligent acts of omission and commission, among others, which may be shown during the trial:

a. Failure to develop and/or implement adequate policies and procedures to competently address stroke and/or administration of tPA;

b. Failure to distribute its written stroke and/or tPA protocol to Dr. Kondilo Skirlis-Zavala, a physician working in the hospital's emergency department;

c. Failure to ensure that Dr. Zavala had reviewed and accepted the hospital's written stroke and/or tPA protocol;

d. Failure to supervise Dr. Zavala, a physician working in Opelousas General's emergency department; and

e. Negligent credentialing of Dr. Zavala.

Thereafter, plaintiffs filed a motion for partial summary judgment asking the District Court to declare their claim against OGH for negligent credentialing was not subject to the terms of the LMMA, including the cap on damages found in La. Rev. Stat. § 40:1231.2(B)(1).

The trial court granted Plaintiffs' Motion for Partial Summary Judgment finding that negligent credentialing was not covered by the Louisiana Medical Malpractice Act ("LMMA"). This court and the Louisiana Supreme Court affirmed the trial court's judgment, finding that Plaintiffs' negligent credentialing

2

claim sounds in general negligence and does not fall within the provision of the LMMA.

On March 15, 2017, OGH filed a Motion for Partial Summary Judgment on the Applicability of the Louisiana Government Claims Act and Rule to Show Cause, arguing the following legal elements, in pertinent part:

> 1. The claim against OGHA [OGH] for negligent credentialing is not covered by the Louisiana Medical Malpractice Act. (*Billeaudeau v. Opelousas General Hospital Authority, et al*, 2016 WL 6123862 (La. 2016)).
>
> 2. Hospital Service Districts, including St. Landry Parish Hospital Service District No. 2, are political subdivisions of the state. (LSA-R.S. 46:1064(A); LSA-R.S. 56:1072(2)(b); *Bertrand v. Sandoz*, 255 So.3d 754, 755 (La. 1971)).
>
> 3. The Opelousas General Hospital Authority is a public trust established to finance, construct, operate, manage and administer hospital and ancillary facilities for St. Landry Parish Hospital Service District No. 2. (*Bertrand v. Sandoz*, 255 So.3d 754, 762 (La. 1971); Exhibit A, attachments 2, 3, 4, and 5).
>
> 4. The Opelousas General Hospital Authority is a "political subdivision" of the State as that term is defined by LSA-R.S. 13:5102(B)(1).
>
> 5. The Louisiana Governmental Claims Act, LSA-R.S. 13:5101 et seq., in general, and Section 5106 concerning limitation of liability, in particular, will apply to the plaintiffs' claim of negligent credentialing.
>
> 6. Both the claims of the primary plaintiff, Brandi Billeaudeau, and the derivative claims of her parents with respect to negligent credentialing are subject to the single statutory cap on damages established by LSA-R.S. 13:5106. . . .

In opposition to the Motion for Partial Judgment, Plaintiffs argue that OGH is a public trust and not a political subdivision; thus, the limitations on liability that are available to political subdivisions are not applicable to their claims. Plaintiffs maintain that "(1) OGH has not identified itself as a political subdivision in this

3

case or in any Answer filed with the Clerk of Court of St. Landry Parish; and (2) OGH has already prayed for and paid for a jury trial." Further, Plaintiffs argue that OGH's position that it is entitled to the protections of La.R.S. 13:5106 because it is a "political subdivision" is inconsistent in that the "public trust was created precisely so that the St. Landry Parish taxpayers would not be financially burdened by the hospital, which is why they no longer have to approve the hospital's financing decisions." Plaintiffs further allege that "[i]nterpreting a public trust to be a political subdivision under §13:5102 and 5106 would also be inconsistent with provisions in the Public Trust Act and OGH's own Trust Indenture concerning liability and the payment of liabilities."

Plaintiffs also filed a Motion to Declare La.R.S. 13:5102(B)(1) unconstitutional. Plaintiffs argue that La.R.S. 13:5102(B)(1) is unconstitutional "as vague, overbroad, and/or violative of Plaintiffs' right to due process of law, right to access to the Courts, right to trial by jury, right to equal protection, and any and all other rights therein guaranteed."

In response to Plaintiffs' opposition, OGH submitted the following facts to establish that there are no genuine issues of fact (emphasis in original):

> 1. Pursuant to an ordinance dated July 6, 1963, the St. Landry Parish Police Jury created Hospital Service District No. 2 of the Parish of St. Landry, State of Louisiana, (referred to herein as "District") wherein the District "shall constitute a public corporation and political subdivision of the state and shall have all the powers and privileges granted by the state constitution and state statutes to such subdivisions, including the authority to incur debt, to issue bonds and to levy taxes." (Exhibit B; *Bertrand v. Sandoz*, 255 So.3d 754, 758-59 (La. 1971)).
>
> 2. The District's hospital opened on May 27, 1957. By 1970, the hospital had experienced rapid growth and was in need of expansion and renovation and, as a result, the District formulated a plan for modernization and expansion to be funded in part by a proposed bond issue

by the District in the amount of $1,600,000.00. (*Bertrand v. Sandoz*, 255 So.3d 754, 756-57 (La. 1971)).

3.  The bond proposal was defeated by the voters on January 12, 1971; due to the critical need for improving the hospital, the District decided to utilize the recently enacted Public Trust Act, Act 135 of 1970 (La. R.S. 9:2341-2347), which authorized the creation of an express trust, with a public body as the beneficiary, to finance public projects from self-generated revenue. (*Bertrand v. Sandoz*, 255 So.3d 754, 757 (La. 1971)).

4.  On April 6, 1971, the public trust named "Opelousas General Hospital Authority" ("OGHA") was created by the District pursuant by [sic] a Trust Indenture to "finance, operate, construct, lease, rent, manage and administer hospital facilities and facilities ancillary and related thereto, and for the public purposes hereinafter set forth as a public instrumentality of the state or a subdivision or agency thereof," wherein the District is the beneficiary, as amended September 25, 1986, May 15, 1991, and July 30, 1991. (Exhibit C, attachments 1, 2, 3, and 4).

5.  On December 13, 1971, the Louisiana Supreme Court, in response to a suit filed contesting the validity of the OGHA, held "that the public trust designated as Opelousas General Hospital Authority is valid and may issue revenue bonds without an election by a majority of the taxpayers of the district." (*Bertrand v. Sandoz*, 255 So.3d 754, 764 (La. 1971)).

6.  On January 25, 1972, the District entered into an "Agreement of Lease" with OGHA whereby the District leases the land and hospital building to OGHA so that OGHA can operate the hospital, as amended February 15, 1973, December 1, 1975, and June 1, 1990 (Exhibit D, attachments 1, 2, 3, and 4).

7.  On May 24, 1972, the Internal Revenue Service issued rulings finding that:

> a.  The $1,600,000.00 in revenue bonds issued by OGHA bear interest which is exempt from Federal income taxation as prescribed in Section 103(a)(1) of the Internal Revenue Code of 1954; and

> b.  The income earned by OGHA, as a result of the operation of the hospital, is not subject to federal income taxation. (Exhibit E).

8.  On January 22, 2004, OGHA filed a "Certificate of Registration of Assumed Business Name" providing that OGHA would do business as "Opelousas General Health System". (Exhibit F).

9.  OGHA is a public trust established to finance, construct, operate, manage and administer hospital and ancillary facilities wherein Hospital Service District No. 2 of St. Landry Parish, a political subdivision of the State of Louisiana, is the beneficiary.

10. OGHA is a "political subdivision" of the State **as that term is defined by LSA-R.S. 13:5102(B)(1)**. Therefore, the Louisiana Governmental Claims Act, LSA-R.S. 13:5101 et seq., in general, and Section 5106 concerning limitation of liability, in particular, will apply to the plaintiffs' claim of negligent credentialing.

After a hearing, the trial court signed a judgment on July 5, 2017, that granted Defendants' Motion for Partial Summary Judgment on the Applicability of the Louisiana Governmental Claims Act and found that "LSA-R.S. 13:5101, *et seq.*, in general, and LSA-R.S. 13:5106 concerning limitation of tort liability, in particular, are controlling with respect to the Plaintiffs' claims of negligent credentialing." The trial court also denied Plaintiffs' Motion to Declare La. R.S. 13:5102(B)(1) unconstitutional.

During the hearing on June 12, 2017, the trial court provided the following reasons for its finding that OGH is a political subdivision, and its denial of Plaintiffs' motion seeking to declare La.R.S. 13:5102(B)(1) unconstitutional:

> I do find, or I did note that upon the termination of the trust that the property reverts back to the beneficiary of the trust which is Hospital Service District No. 2 of St. Landry Parish. And it's only leased to them, which means that ownership --- at least part of it --- ownership remains with the Hospital Service District and not the trust. . . .
>
> I think it's a question of law. And a motion for summary judgment based on the interpretation of statutes and, in particular, Louisiana Revised Statute 13:5102(B)[,] which defines political subdivision, under subpart (1), or (B)(1), [as] ["]any parish, municipality, special district,

schoolboard [sic], sheriff, public board, institution, department, commission, district, corporation, agency, authority, or an agency or subdivision of any of these and . . . other public or governmental body of any kind which is not a state agency.["]  I'm going to find that the hospital, both the trust and the --- as you argued, the --- if you diagram it you have the State gave the authority to the police jury, the police jury created the hospital service district, the hospital service district then essentially created the trust and the property is still owned in part by the hospital service district, will revert back to the hospital service district upon the termination of the trust. I think under a clear reading of Revised Statute 13:5102(B)(1) that both would be political subdivisions.

. . . .

[I]t's very difficult to declare a statute unconstitutional. They're presumed to be constitutional and valid.  Again, I understand, and I assume that the arguments can be made, that there are no other cases that specifically deal with the applicability of the statute to a public trust that is essentially the funding arm or mechanism of a hospital service district, but there have been numerous other political subdivisions that have urged the protections or the limitations of liability of the statute and I don't think it's ever been held unconstitutional in any of those other cases.  But I'm going to deny the motion for summary judgment seeking to declare 13:5102(B)(1) unconstitutional.

Plaintiffs now appeal this final judgment.  On appeal, Plaintiffs allege the following three assignments of error:  (1) the trial court erred in concluding that OGH, a public trust, meets the statutory definition of "political subdivision" contained in La.R.S. 13:5102(B)(1); (2) the trial court erred in holding that the public trust is a "political subdivision;" and (3) in the alternative, the trial court erred in determining that La.R.S. 13:5102(B)(1) is constitutional as applied to their case.

**STANDARD OF REVIEW:**

An appellate court reviews a trial court's granting of a motion for summary judgment de novo. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d

7

544. Under this standard of review, the appellate court uses the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.*

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). As stated in La.Code Civ.P. art. 966 (D)(1):

> [I]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

**DISCUSSION:**

In this case, we are to determine whether OGH falls within the statutory definition of a "political subdivision" contained in La.R.S. 13:5102(B)(1), and if so, whether this statute is constitutional. Our decision is premised on the fact that "the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject." *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p. 13 (La. 7/1/08), 998 So.2d 16, 27, *amended on reh'g* (9/19/08). Thus, this court will interpret the legislative language "on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view." *Id.* As the Louisiana Supreme Court stated in *Duckworth*

8

*v. La. Farm Bureau Mut. Ins. Co*., 11-2835, p. 12 (La. 11/2/12), 125 So.3d 1057, 1064:

> In Louisiana, as in other civil law jurisdictions, legislation is superior to any other source of law. *See*, La. C.C. art. 1; *Doerr v. Mobil Oil Corp*., 00-0947, p. 13 (La.12/19/00), 774 So.2d 119, 128. Therefore, as the solemn expression of the legislative will, if an enactment provides a solution to a particular situation, then no jurisprudence, usage, equity or doctrine can prevail over the legislation. *See* La. C.C. arts. 2 and 3. It is only when a particular situation is not covered by legislation that a solution can be sought elsewhere. La. C.C. art. 4.
>
> The judiciary's role in the civil law, first and foremost, is not to legislate from the bench, but to interpret the legislative will and apply statutory pronouncements to specific cases. Albert Tate, Jr., *Techniques of Judicial Interpretation in Louisiana*, 22 La.L.Rev. 727, 728 (1962) ("The Louisiana judge must, as stated, find primarily in legislative enactments the legal principles to be applied in deciding the case before him."). Interpretation of the legislative will is accomplished through the rules of statutory construction. Pursuant to these rules, the interpretation of a legislative enactment begins with the language of the law itself. *In re Succession of Faget*, 10-0188, p. 8 (La.11/30/10), 53 So.3d 414, 420; *Touchard v. Williams*, 617 So.2d 885, 888 (La.1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law must be applied as written, and no further interpretation may be made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. Unequivocal provisions are not subject to judicial construction and should be applied by giving the words their generally prevailing meaning. La. C.C. art. 11; La. R.S. 1:3; *Oubre v. Louisiana Citizens Fair Plan*, 11-0097, p. 12 (La.12/16/11), 79 So.3d 987, 997. Further, laws on the same subject matter are to be interpreted in reference to each other. La. C.C. art. 13.

We will now examine the instant case with these considerations in mind.

The Louisiana Constitution Article 12, § 10(C) "grants the legislature the power to enact legislation to limit or set out the conditions of the State's liability." *Fulmer v. State, Dep't of Wildlife & Fisheries*, 10-2779, p. 7 (La. 7/1/11), 68 So.3d

499, 504. Specifically, in 1995, La.Const. art. 12 §10(C) was amended to read, in pertinent part:

> [T]he legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.

The Louisiana Governmental Claims Act, found at La.R.S. 13:5101 *et seq.*, applies:

> to any suit . . . for injury to person . . . against the state, a state agency . . . or a political subdivision of the state, as defined herein, or against an officer or employee of a political subdivision arising out of the discharge of his official duties or within the course and scope of his employment.

La.R.S. 13:5101(B). Louisiana Revised Statutes 13:5102(B)(1) defines a "political subdivision" as "[a]ny parish, municipality, special district, school board, sheriff, public board, institution, department, commission, district, corporation, agency, authority, or an agency or subdivision of any of these, and other public or governmental body of any kind which is not a state agency." Louisiana Revised Statutes 13:5106 establishes a $500,000.00 cap on general damage awards against all public entities, and provides the legislature's reasons for limiting the liability of the state, as follows:

> (1) That judgments against public entities have exceeded ability to pay on current basis.

10

(2) That the public fisc is threatened by these judgments to the extent that the general health, safety, and welfare of the citizenry may be threatened.

(3) That the limitations set forth in this Section are needed to curb the trend of governmental liability abuses, to balance an individual's claim against the needs of the public interests and the common good of the whole society, and to avoid overburdening Louisiana's economy and its taxpaying citizens with even more new and/or increased taxes than are already needed for essential programs.

(4) That the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the constitution.

La.R.S. 13:5106(E).

The Louisiana Supreme Court recently provided a historical overview of the Louisiana Governmental Claims Act in *Fecke v. Bd. of Supervisors of Louisiana State Univ.*, 15-1806, 15-1807, pp. 8-9 (La. 9/23/16), 217 So.3d 237, 244-45, *modified on reh'g sub nom. Fecke v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 15-1806, 15-1807 (La. 10/19/16), 218 So.3d 1 (footnotes omitted) (alteration in original), and stated, in pertinent part:

> The Louisiana Governmental Claims Act was adopted in 1975 pursuant to an amendment to the Louisiana Constitution giving constitutional status to the proscription against sovereign immunity from substantive tort liability. The Act establishes procedural rules that apply to any suit in contract or for injury to person or property against the state, a state agency, or a political subdivision of the state. See La. Rev. Stat. 13:5101(B). When enacted, La. Rev. Stat. 13:5106 provided the lone limitation that "[n]o suit against the state, state agency or political subdivision shall be instituted in any court other than a Louisiana state court." In 1985, the Legislature amended La. Rev. Stat. 13:5106 to expand the limitations on suits against the state and political subdivisions. The 1985 revision placed a limit of $500,000.00 on general damages assessed against the state in personal injury and wrongful death actions; provided for the recovery of

11

medical care and related benefits, loss of earnings and/or support, loss of future earnings or support; defined the terms "medical care and related benefits," "loss of earnings," "loss of support," "loss of future earnings" and "loss of future support"; and enunciated the legislative findings and purposes of the statute. See La. Rev. Stat. 13:5106(B), (C), (D) and (E).

In 1993, this Court declared La. Rev. Stat. 13:5106(B)(1) unconstitutional, holding the $500,000.00 cap on general damages in a personal injury suit against the State contravened the proscription against sovereign immunity from tort liability provided for in Louisiana Const. 1974 article XII, § 10(A). *Chamberlain v. State Through Dept. of Transp. and Development*, 624 So.2d 874, 881 (La. 1993). In response, the Legislature proposed an amendment to Louisiana Const. 1974 article XII, § 10(C), to allow the legislature to "limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages." The amendment was approved by the voters on October 21, 1995, and went into effect November 23, 1995, allowing a cap on general damages against the State to be reinstated. In anticipation, the Legislature amended La. Rev. Stat. 13:5106 "in accordance with and based upon the legislative authority provided for in the proposed constitutional amendment to Article XII, Section 10 of the Constitution of Louisiana." See *Digest*, 1995 House Bill No. 1936. The 1995 amendments to La. Rev. Stat. 13:5106(B) increased the maximum liability of the State for general damages in wrongful death cases at $750,000.00.

In an effort at tort reform, the Legislature in 1996 amended La. Rev. Stat. 13:5106(B) to limit general damages in suits against the state, a state agency, or political subdivision for personal injury or wrongful death to $500,000.00. . . .

In 2004, this Court held the $500,000.00 cap on damages for a wrongful death action under La. Rev. Stat. 13:5106(B)(2) applied to each individual plaintiff, instead of each death victim. *Lockett v. State, Department of Transportation*, 2003-1767 (La. 2/25/04), 869 So.2d 87. The Legislature responded, amending La. R.S. 13:5106(B)(1) and (2) to limit the total liability of the state and political subdivisions for personal injury or wrongful death of any one person, including all claims and derivative claims, to $500,000.00 regardless of the

number of suits filed or claims made for the personal injury or wrongful death of that person. More recently, the Legislature amended La. Rev. Stat. 13:5106, adding subsection F, to preclude the application of La. Rev. 13:5106 to claims arising under La. Rev. Stats. 40:1299.3917, the Malpractice Liability for State Services Act.

The record evidences the fact that the Hospital Service District No. 2 of St. Landry was created in 1953 as a political subdivision of the State of Louisiana, pursuant to La.R.S. 46:1064(A), which provides:

> The hospital service districts as defined in R.S. 46:1072 are hereby declared to be political subdivisions of the state, and for the purpose of purchasing and acquiring lands and purchasing, acquiring, constructing and maintaining hospitals, nursing homes, physicians and dentists offices, laboratories, and other physical facilities necessary to carry out the purposes of this Chapter. Title to such land and physical facilities shall be in the public. Such districts shall be subdivisions of the state of Louisiana within the meaning of the laws of Louisiana relating to the voting and levy of special maintenance taxes incurring debt and issuing bonds therefor, including particularly but without limitation R.S. 39:504.1, 515-518, 551-571, 575-577, 611-617, 701-706, and 911, and shall be authorized to issue hospital revenue bonds pursuant to R.S. 39:559.1 and 1011-1024, and as otherwise permitted by law. Hospital service districts are hereby further authorized to issue bonds pursuant to the foregoing to refund outstanding bonded indebtedness whether issued by such hospital service district or by another political subdivision of the state on behalf of such hospital service district or in respect of any hospital facilities owned or operated by any such hospital service district.

The record further supports the fact that OGH was created as a "public trust" under the Public Trust Act, Act 135 of 1970, now La.R.S. 9:2341 *et seq.*, for the benefit of the Hospital Service District No. 2 of St. Landry. The Trust Indenture, signed on April 6, 1971, states the reason for creating the trust, as follows:

ARTICLE 1
CREATION OF TRUST

The undersigned Trustor creates and established a Trust (herein called "The Trust") for the use and benefit

13

of Hospital Service District No. 2, (herein called the "Beneficiary"), to finance, operate, construct, lease, rent, manage and administer hospital facilities and facilities ancillary and related thereto, and for the public purposes hereinafter set forth as a public instrumentality of the state or a subdivision or agency thereof, under the provision of Act No. 135, 1970, L[a].R.S. 9:2341, et seq. as amended, Louisiana Revised Statutes 1970, and the Louisiana Trust Code and other statutes of the State of Louisiana, as applicable.

On September 25, 1986, the Trust Indenture was amended to include Article IV, section 4.1, to state "The purpose of the Trust shall constitute authorized public functions or purposes held to be an essential public function conducted in the public interest . . . ."

According to La.R.S. 9:2341(D), as amended in 1978, (emphasis added), "[a]ll public trusts hereafter **created or amended under this Chapter** shall constitute **public corporations** of the beneficiary . . . All public trusts created heretofore or hereafter shall be subject to the Public Contracts Law, Public Records Law, Public Meetings Law, Code of Ethics, and the Bond Validation Procedures Law." Although the Public Trust Act was amended in 1976 and 1978 to include, and clarify, section D of La.R.S. 9:2341, the record indicates that the Hospital Service District No. 2 of St. Landry amended its Trust Indenture Instrument on September 25, 1986, May 15, 1991, and again on July 30, 1991, to conform the trust to the amended and re-enacted Public Trust Act. The record also indicates that the Hospital Service District No. 2 of St. Landry leased the land and hospital building to OGH on January 25, 1972, and amended the lease agreements on February 15, 1973, December 1, 1975, and June 1, 1990.

Although Plaintiffs cite to *Bertrand v. Sandoz*, 260 La. 239, 255 So.2d 754 (1971), for the proposition that the Louisiana Supreme Court confirmed that OGH is a public trust and not a political subdivision, we find this case inapplicable to the

facts of this matter because the Louisiana Governmental Claims Act was enacted four years after this supreme court case was decided, and the definition of "political subdivision" used in La.R.S. 13:5102(B)(1) was not at issue in *Bertrand*.

For these reasons, we agree with the trial court that the 1986 and 1991 amendments to the Hospital Service District No. 2 of St. Landry's Trust Indenture brought the OGH within the scope of the legislative amendments throughout the years and that OGH is a "public corporation" within the meaning of the Louisiana Governmental Claims Act.

The second issue for this court to address is whether La.R.S. 13:5102(B)(1) is constitutional as applied to Plaintiffs' case. Plaintiffs argue that there is no rational relationship to any state interest in extending the Louisiana Governmental Claims Act to OGH, and that it only serves "to deprive the Billeaudeaus of their constitutional guarantees of equal protection, due process of law, access to the courts, and an adequate remedy under the law."

The Louisiana Supreme Court addressed the principles of review for constitutionality in *La Fed'n of Teachers v. State*, 13-120, 13-232, 13-350, pp 21-22 (La. 5/7/13), 118 So.3d 1033, 1048-49 (emphasis added), and stated:

> As a general rule, legislative instruments are presumed to be constitutional; therefore, the party challenging the validity of a legislative instrument has the burden of proving its unconstitutionality. *See State v. Citizen*, 04-1841, p. 11 (La.4/1/05), 898 So.2d 325, 334; *Louisiana Municipal Association*, 04-0227 at 45, 893 So.2d at 842; *Board of Commissioners of North Lafourche Conservation, Levee and Drainage District v. Board of Commissioners of Atchafalaya Basin Levee District*, 95-1353, pp. 3-4 (La.1/16/96), 666 So.2d 636, 639.
>
> Because the provisions of the Louisiana Constitution are not grants of power, but instead are limitations on the otherwise plenary power of the people of the state, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit. *Louisiana Municipal Association*, 04-

15

0227 at 45, 893 So.2d at 842-43; *Polk v. Edwards*, 626 So.2d 1128, 1132 (La.1993); *Board of Commissioners of Orleans Levee District v. Department of Natural Resources*, 496 So.2d 281, 286 (La.1986). **Consequently, a party challenging the constitutionality of a legislative instrument must point to a particular provision of the constitution that would prohibit the enactment of the legislative instrument and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the legislative instrument in question.** *See World Trade Center Taxing District v. All Taxpayers, Property Owners*, 05-0374, p. 12 (La.6/29/05), 908 So.2d 623, 632; *Caddo-Shreveport Sales and Use Tax Commission v. Office of Motor Vehicles Department of Public Safety and Corrections of the State*, 97-2233, pp. 5–6 (La.4/14/98), 710 So.2d 776, 779; *Polk*, 626 So.2d at 1132. A constitutional limitation on the legislative power may be either express or implied. *World Trade Center Taxing District*, 05-0374 at 12, 908 So.2d at 632; *Caddo-Shreveport Sales and Use Tax Commission*, 97-2233 at 6, 710 So.2d at 779-80.

Finally, because it is presumed that the legislature acts within its constitutional authority in promulgating a legislative instrument, **this court must construe a legislative instrument so as to preserve its constitutionality when it is reasonable to do so**. *See State v. Fleury*, 01-0871, p. 5 (La.10/16/01), 799 So.2d 468, 472; *Moore v. Roemer*, 567 So.2d 75, 78 (La.1990). In other words, if a legislative instrument is susceptible to two constructions, one of which would render it unconstitutional or raise grave constitutional questions, the court will adopt the interpretation of the legislative instrument which, without doing violence to its language, will maintain its constitutionality. *See Hondroulis v. Schuhmacher*, 553 So.2d 398, 416-17 (La.1988). Nevertheless, the constitution is the supreme law of this state to which all legislative instruments must yield. *See World Trade Center Taxing District*, 05-0374 at 12, 908 So.2d at 632; *Caddo-Shreveport Sales and Use Tax Commission*, 97-2233 at 6, 710 So.2d at 780. When a legislative instrument conflicts with a constitutional provision, the legislative instrument must fall. *See Caddo-Shreveport Sales and Use Tax Commission*, 97-2233 at 6, 710 So.2d at 780.

Thus, under *La Fed'n of Teachers*, the Louisiana Supreme Court made it clear that a person challenging the constitutionality of a statute must point to a

particular provision of the constitution that has been violated and must demonstrate clearly and convincingly how the statutory provision has violated the constitutional provision.

After reviewing Plaintiffs' pleadings, we find that Plaintiffs failed to actually explain how their rights were violated by the statutes at issue in order to overcome the presumption of constitutionality. Further, the La.Const. art. 12, § 10(C) directs the legislature to provide both a procedure for suits against entities such as OGH and for a limitation on the effect of judgments against it. We find that the legislature clearly expressed its purpose in enacting the Louisiana Governmental Claims Act and we find that the statutes evidence the legislative intent to limit recovery of damages from political subdivisions of the state as defined by La.R.S. 13:5102(B)(1).

Accordingly, we find that the trial court properly granted Defendants' Motion for Partial Summary Judgment on the applicability of the Louisiana Governmental Claims Act and its finding that the provisions of the Act are controlling with respect to Plaintiffs' claims of negligent credentialing. Further, we find that the trial court properly denied Plaintiffs' Motion to Declare La.R.S 13:5102(B)(1) unconstitutional.

**AFFIRMED.**