Rel: May 3, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

————————————————

### CR-2023-0324

————————————————

**Tavaris Deshon Wilder**

**v.**

**State of Alabama**

**Appeal from Tuscaloosa Circuit Court**
**(CC-19-1426)**

McCOOL, Judge.

Tavaris Deshon Wilder appeals his convictions for discharging a firearm into an occupied vehicle, see § 13A-11-61, Ala. Code 1975, and second-degree assault, see § 13A-6-21, Ala. Code 1975. The trial court sentenced Wilder to 20 years' imprisonment for his discharging-a-

firearm-into-an-occupied-vehicle conviction. The trial court sentenced Wilder to 10 years' imprisonment for his second-degree-assault conviction and split that sentence, ordering Wilder to serve two 2 years' imprisonment, to be followed by 5 years of supervised probation. Those sentences are to run concurrently.

Facts

On April 30, 2019, Brasia Sparks and Shanajah Gary were engaged in a physical fight in the parking lot of an apartment complex in Tuscaloosa. Other people were present during the fight, including Wilder, who is the father of Gary's child. At one point during the fight, Sparks "got on top of" Gary, and Wilder "pulled [her] off." (R. 118.) Sparks testified that, as Wilder was pulling her off Gary, she heard someone yell: "He has a gun." (Id.) Sparks and several other people, including Kaleria Gilbert, then "ran to the car," and, "when [they] got at [the] car, shots fired into the car." (R. 119.) The State's evidence indicated that there were two bullet holes in the car that Sparks used to flee the scene, and Sparks suffered gunshot wounds to her head and shoulder during the shooting. However, Sparks did not see who shot her. (R. 127-28.)

2

Gilbert testified at trial, but the only details she could recall were "picking [Sparks] up and … gunshots and … ducking down and seeing blood." (R. 139.) Given Gilbert's lack of memory, the State sought and was granted permission to play an audiovisual recording of the statement she provided to law enforcement on the day of the shooting. After that statement was played for the jury, Gilbert testified as follows:

"Q. Now, that was you in that audio statement, correct?

"A. Yes, sir.

"Q. And you don't remember what happened that day?

"A. No, sir.

"Q. But in that statement, you say that Tavaris Wilder had a gun?

"A. Yes. In the statement.

"Q. A couple seconds before -- a couple seconds, you see him with a gun before you get into the car?

"A. Yes, sir.

"Q. And then three or four seconds pass, and then gunshots happen?

"A. Yes, sir."

(R. 144-45.) Gilbert conceded on cross-examination that she did not see Wilder shooting, but she testified on redirect examination that Wilder was the only person she saw with a gun. (R. 148.)

Inv. Jason McKee of the Tuscaloosa Police Department questioned Wilder the day after the shooting. According to Inv. McKee, Wilder admitted that he was present when Sparks and Gary were fighting; admitted, after initially denying that he was armed, that he was armed with a handgun that was tucked into the waistband of his pants; and admitted that it was his gun that had been used to commit the offenses. However, Wilder denied that he had committed the offenses and told Inv. McKee that "some unknown person came up behind him wearing a mask; that person removed the handgun from his waistband, told him he was talking too much, and that person started shooting." (R. 225.) Wilder also told Inv. McKee that, when the shooting began, he ran home and then later went to a gas station, but Inv. McKee confirmed with Wilder's mother and through surveillance cameras at the gas station that those aspects of Wilder's statement were not true.

On cross-examination, defense counsel asked Inv. McKee if he had developed any other suspects during his investigation. Inv. McKee

4

testified in response that Wilder's previous attorney had provided him with some Facebook social-media messages that had prompted him to interview Jaiveon Dubose. However, Dubose told Inv. McKee that he had not posted the Facebook messages and had not been at the apartment complex at the time the offenses occurred, and there was no evidence that placed Dubose at the scene of the offenses.

## Discussion

Wilder raises two claims on appeal that, he says, require reversal of his convictions. We reject those claims and affirm the convictions, but we remand the case to the trial court for that court to correct an error in one of Wilder's sentences.

## I.

Wilder argues that the trial court erred by denying his motion for a judgment of acquittal because, he says, the State's evidence was not sufficient to sustain his convictions. In reviewing the sufficiency of the State's evidence, this Court

> "'"must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."' Ballenger v. State, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998) (quoting Faircloth v. State, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985)).

5

'"The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."' Nunn v. State, 697 So. 2d 497, 498 (Ala. Crim. App. 1997) (quoting O'Neal v. State, 602 So. 2d 462, 464 (Ala. Crim. App. 1992)). '"When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision."' Farrior v. State, 728 So. 2d 691, 696 (Ala. Crim. App. 1998) (quoting Ward v. State, 557 So. 2d 848, 850 (Ala. Crim. App. 1990)). 'The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So. 2d 1040, 1042 (Ala. 1978)."

Wilson v. State, 142 So. 3d 732, 809 (Ala. Crim. App. 2010).

"[C]ircumstantial evidence is not inferior to direct evidence," Reid v. State, 131 So. 3d 635, 640 (Ala. Crim. App. 2012), and "is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty." Mogil v. State, 225 So. 3d 211, 216 (Ala. Crim. App. 2016) (citations omitted).

Section 13A-11-61(a) provides that "[n]o person shall shoot or discharge a firearm, explosive or other weapon which discharges a dangerous projectile into any occupied or unoccupied dwelling or building

6

or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft in this state."

Section 13A-6-21 provides, in relevant part:

"(a) A person commits the crime of assault in the second degree if the person does any of the following:

"(1) With intent to cause serious physical injury to another person, he or she causes serious physical injury to any person.

"(2) With intent to cause physical injury to another person, he or she causes physical injury to any person by means of a deadly weapon or a dangerous instrument.

"(3) He or she recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument."

In support of his sufficiency-of-the-evidence claim, Wilder argues that "[n]one of the witnesses produced by the State actually saw [him] shoot." (Wilder's brief, p. 12.) That much is true. However, Wilder admitted to Inv. McKee that he was at the scene of the offenses, that he was in possession of a gun, and that it was his gun that was used to commit the offenses. In addition, Sparks testified that she had been fighting with Gary, who is the mother of Wilder's child, mere seconds before the offenses occurred. Also, the only evidence indicating that

7

someone else might have committed the offenses was Wilder's self-serving allegation that some unidentified masked person grabbed the gun from the waistband of his pants and committed the offenses. Thus, there was strong circumstantial evidence indicating that Wilder committed the offenses, and his allegation regarding the unidentified masked person did not render the State's evidence insufficient to sustain his convictions; instead, it merely provided conflicting evidence that created a question of fact for the jury to resolve. See Hobdy v. State, 919 So. 2d 318, 325 (Ala. Crim. App. 2005) (noting that any conflicts in the State's evidence go to the weight of the evidence and create a question of fact for the jury to resolve); and Dotch v. State, 67 So. 3d 936, 964 (Ala. Crim. App. 2010) ("'Questions of identity are for the jury to resolve.'" (quoting Powell v. State, 600 So. 2d 1085, 1086 (Ala. Crim. App. 1992))). Thus, the trial court did not err by denying Wilder's motion for a judgment of acquittal and submitting the charges to the jury.

## II.

Wilder argues that the trial court "denied [him] his constitutionally protected right to a full and complete defense." (Wilder's brief, p. 14.) Specifically, Wilder argues that his "defense was that an alternate

suspect, namely Jaiveon Dubose, took his gun and was the person responsible for the shooting" (id.) and that the trial court "prohibited [defense counsel] from inquiring about law enforcement's investigation into the alternative suspect." (Id. at 15.) However, Wilder did not raise that claim at trial, and, thus, it was not preserved for appellate review. Holderfield v. State, 255 So. 3d 746, 751 (Ala. Crim. App. 2017). Moreover, we note that the trial court allowed defense counsel to question Inv. McKee about his investigation into Dubose's potential involvement (R. 240-42), and Wilder has not identified on appeal any questions that the trial court prohibited defense counsel from asking.

### III.

Although we affirm Wilder's convictions, we must remand the case to the trial court for that court to correct the probationary period of Wilder's sentence for his second-degree-assault conviction. Neither party raises an issue regarding the probationary period, but it is well settled that "'[m]atters concerning unauthorized sentences are jurisdictional'" and that this Court therefore "'may take notice of an illegal sentence at any time.'" Harris v. State, [Ms. CR-2022-0934, Feb. 9, 2024] ___ So. 3d ___, ___ (Ala. Crim. App. 2024) (quoting, respectively, Hunt v. State, 659

So. 2d 998, 999 (Ala. Crim. App. 1994), and Austin v. State, 864 So. 2d 1115, 1117 (Ala. Crim. App. 2003)).

The trial court sentenced Wilder to 10 years' imprisonment for his second-degree-assault conviction and split the sentence, ordering Wilder to serve 2 years' imprisonment, to be followed by 5 years of supervised probation. Second-degree assault is a Class C felony, § 13A-6-21(b), and, at the time of Wilder's offenses, § 15-18-8(b), Ala. Code 1975, provided, in relevant part:

> "Unless a defendant is sentenced to probation, drug court, or a pretrial diversion program, when a defendant is convicted of an offense that constitutes a Class C … felony offense and receives a sentence of not more than 15 years, the judge presiding over the case shall order that the convicted defendant be confined in a prison, jail-type institution, treatment institution, or community corrections program … for a period not exceeding two years in cases where the imposed sentence is not more than 15 years, and that the execution of the remainder of the sentence be suspended notwithstanding any provision of law to the contrary and that the defendant be placed on probation <u>for a period not exceeding three years</u> and upon such terms as the court deems best."

(Emphasis added.)

Thus, at the time of Wilder's offenses, the maximum probationary period the trial court could impose for Wilder's second-degree-assault conviction was three years, and, as a result, Wilder's five-year

10

probationary period is illegal.[1] We therefore remand this case to the trial court for that court to hold a new sentencing hearing at which it imposes a probationary period that complies with the version of § 15-18-8(b) that was in effect at the time of Wilder's offenses. "Because the 10-year base sentence and the 2-year confinement portion of [Wilder's] split sentence are valid, the trial court may not change them." Dungan v. State, [Ms. CR-2022-1135, May 5, 2023] ___ So. 3d ___, ___ (Ala. Crim. App. 2023). The trial court also may not change Wilder's 20-year sentence for his discharging-a-firearm-into-an-occupied-vehicle conviction, which is a valid sentence. The trial court shall take all necessary steps to ensure that the circuit clerk makes due return to this Court within 35 days of the date of this opinion, and the return to remand shall include the transcript of the new sentencing hearing and a copy of the new sentencing order.

---

[1]Section 15-18-8 was amended effective July 1, 2023, and now provides that, when a defendant is convicted of a Class C felony and receives a sentence of not more than 15 years, the trial court may split the sentence and order that the defendant "be placed on probation for a period as determined by the court." § 15-18-8(a)(1). However, the amended statute does not apply retroactively to Wilder's 2019 offenses. Cosper v. State, [Ms. CR-2022-1168, Dec. 15, 2023] ___ So. 3d ___, ___ n.2 (Ala. Crim. App. 2023).

<u>Conclusion</u>

Wilder has not demonstrated that any reversible error occurred in his trial. Thus, we affirm Wilder's convictions. However, we remand the case to the trial court for that court to hold a new sentencing hearing at which it imposes a probationary period that complies with the version of § 15-18-8(b) that was in effect at the time of Wilder's offenses.

AFFIRMED AS TO CONVICTIONS; REMANDED WITH INSTRUCTIONS AS TO SENTENCING.

Windom, P.J., and Kellum, Cole, and Minor, JJ., concur.